JOSEPH EUGENE WYNN *v.* STATE OF MARYLAND

[No. 876, September Term, 1973.]

*Decided July 19, 1974.*

The cause was argued before ORTH, C. J., and THOMPSON and LOWE, JJ.

*Gerald A. Kroop* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Stephen R. Tully, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

This Court's first impression of this case will hopefully be its last one as well. Time has so eroded the circumstances that the judge who presided at the initial arraignment is no longer a member of the court, the original state's attorney is a member of this Court, the original defense attorney is the present state's attorney, the succeeding defense attorney is an assistant attorney general and the assistant state's attorneys assigned to prosecute have changed not only their identities but their "bargains" as well.

Nearly five years ago, on December 5, 1969, Joseph Eugene Wynn was indicted by a grand jury in Baltimore City. After two mistrials in the Criminal Court of Baltimore, his case was set for trial in November of 1971. At the joint request of counsel a continuance was granted to permit the conditions of a plea bargain substantially agreed upon to be

reduced to writing. The essence of the inducement to plead guilty to one of several charges was the State's recommendation of probation on that charge and a "stet" for the remainder. Appellant also agreed to consent to subject himself to "a search and seizure without warrant" during the probationary period. For some reason, unexplained in the record, no written agreement was ever prepared or consummated. In the meantime the cast of characters on behalf of the State changed and the newly assigned assistant state's attorney was reluctant to abide by the proposed agreement of his predecessor.[1]

Appellant filed a "Motion for Specific Performance of Plea Bargaining Agreement," an imaginative if unprecedented effort. Although no order appears in the record, counsel below and on appeal all agree that a judge, sitting as the Criminal Court of Baltimore, granted the motion and ordered the State specifically to perform the agreement. The judge who presumably granted the *sui generis* order declined Appellant's request to bind himself to follow the State's recommendation in sentencing the Appellant. As a consequence, Appellant requested permission to withdraw his guilty plea. The request was granted and the case was returned for assignment to another judge.

On August 29, 1973 Wynn was re-arraigned and submitted a plea of guilty to one count, ". . . as the result of plea bargaining." After the foundation had ". . . been gone into about as completely as I have ever heard," the newly assigned sentencing judge insisted that she wanted ". . . any promises or inducements to encourage this plea . . ." before the court. The assistant state's attorney then summarized the plea negotiations for the judge and chose gratuitously to offer his own personal opinion.

> "MR. TULLY: Yes, Your Honor. To reiterate, there has been plea negotiations in the case. On May 17, 1973, the State, represented by myself, and

---

1. Appellant has not been incarcerated during this period; he is still free on bond pending this appeal. The record reveals no reason or explanation for the sporadic delays between trial dates.

168

Mr. Kroop finished an evidentiary hearing in front of Marshal Levin in Criminal Court Part I. The finding by Judge Levin at that that (sic) was that the State had made a plea bargain with the Defense Counsel, and we were bound under *Santabello vs. Untied States* (sic) to make that recommendation. We would make the recommendation today, of course, pointing out to the Court again that the withdrawal of the guilty plea by Defense Counsel in Part One on that day could, in fact, be argued that we are no longer so bound. However, there has been indication that we are so bound, and we would make this recommendation. I would like for the record to reflect that this member of the State's Attorney's Office is not in accord with the recommendations we are bound upon. We feel it is contrary to justice; we feel that it is personally not a plea.

"THE COURT: You say, we feel or I feel?

"MR. TULLY: I feel. It is my personal feeling. I would point out again, I have discussed this with Milton Allen, State's Attorney, told him my feelings on negotiations in this plea, he informed me that he knows what I am going through and my thinking in it. However, he realizes we are bound under this Supreme Court decision. The recommendations we would make under these conditions would be—

"THE COURT: Could I interrupt you there. Is the recommendation you are about to make, the recommendation which had been made by previous Assistant State's Attorney on which Judge Levin ruled, that you, the State's Attorney are now bound?

"MR. TULLY: Yes, Your Honor, it is.

"THE COURT: It is the same?

"MR. TULLY: Yes. Because if Mr. Wynn plead guilty, the State would recommend a suspended sentence, he would be placed on probation for five

years under the require- (sic) that he signed and agreed to with his counsel a search requirement where he waives his right to certain requirements under the Fourth Amendment. This will be a part of the record if the Court so directs after a pre-sentence report, that this is the judgment of the Court. We have to make this recommendation, so we do.

"THE COURT: What is the written agreement you have here?

"MR. TULLY: That would be signed and executed and, of course, at the time of sentencing if you feel that probation will be granted, then we will present it to the Court and make it part of the order. It is conditioned upon you granting probation.

"THE COURT: I am not going to do anything with regard to disposition until I get the pre-sentence report. You had better hold on to that."

The matter was set for sentencing on October 24, 1973, pending the submission of a pre-sentence investigation report. Appellant's counsel, arguing in mitigation, reminded the court of the plea bargain after which the court asked the assistant state's attorney if he wished to say anything. The following colloquy ensued:

"MR. TULLY: Your Honor, I would like to say a few things. The first thing is I am bound under plea negotiations and, therefore, I cannot go into certain things and I will not at this time under *Santobello versus United States* (sic). I would just point out two basic things. Under the incarceration theory proposed by Mr. Kroop, of course, that is not accepted by all parties. It is not accepted by myself and it is not accepted by society for the protection of society.

"MR. KROOP: Your Honor, I would — excuse

me, Mr. Tully. Your Honor, we are going to have to respectfully object.

"MR. TULLY: That is all that I was going to say.

"MR. KROOP: We object and ask it be stricken. I think he is bound by Court order to do one thing and that is to get up and say, "Your Honor, the State recommends probation."

"THE COURT: Well, we went through all this before, I think.

"MR. TULLY: The only thing I would add for the record is that everything I have done has been fully concurred with Mr. Allen, Mr. Milton Allen, and I would like that to be reflected on the record."

In sentencing the Appellant to three years imprisonment the judge acknowledged that it had been made clear to her that ". . . the precise State's Attorney, Mr. Tully, who is assigned to this case does not personally agree with the plea bargaining arrangement, but he is bound to follow it because of the ruling of Judge Levin."

*Santobello v. New York*, 404 U. S. 257, makes it clear that ". . . when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York, supra*, 262. Leaving aside the reason why the State agreed to recommend probation, it is clear from the record that Joseph Eugene Wynn was induced to plead guilty by virtue of that negotiated recommendation.

Not only did the disavowed recommendation do violence to the sanctions of *Santobello*, but it would have bordered on contemptuous had it been flung broadcast in the aftermath of a court order which the parties presumed was validly issued at the time the statement was made. Notwithstanding the stipulation that such an order was granted, it is reflected in neither the docket entries nor the record itself.[2]

2. Even assuming that such an order had appeared in the record, we find it difficult to see how an anticipatory or executory agreement could be

Since we conclude that the attempt to take back with one hand what has been held out by the other is reversible error, we must determine the ultimate relief to which Appellant is entitled. Before doing so, we are compelled to note our concern, not merely for the fundamentals of fair play, but more pragmatically for the integrity of the plea bargaining process. The State's reputation for holding to its word must not be permitted to be viewed in the light of this example. Such a reputation could very well bring about the demise of the plea bargain in Maryland. This procedure to dispose of criminal charges presupposes fairness. "Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities." *Santobello v. New York, supra,* 260. A reputation that the State has stood and will continue to stand by its agreements is the only assurance sufficient to encourage an accused to step forward in reliance upon a mitigatory recommendation by the State.

## The Remedy

In *Santobello,* the petitioner sought the right to withdraw his plea. The court split on this question with the majority leaving the ". . . ultimate relief to which petitioner is entitled . . . to the discretion of the state court . . . ." *Santobello v. New York, supra,* 263. Mr. Justice Douglas, concurring, went a step beyond by saying, "In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." *Santobello v. New York, supra,* 267. The three other justices who chose to concur by separate opinion expressed the view that the breach of the plea bargain justified vacating the plea, which was the remedy sought. Guidance was equivocal even from the concurring minority when they added, "Of course, where the prosecutor has broken the plea agreement, it may be

---

specifically enforced unless a defendant had been induced to — and actually did — move to a position of irreparable prejudice.

appropriate to permit the defendant to enforce the plea bargain." *Santobello v. New York, supra,* 268.

The search for a remedy should not be concerned with either the assessment of fault or retribution. Primary, if not exclusive, concern should be for the rights of the defendant at this stage, rather than for the punishment of a prosecutor who flouted those rights. Whether the prosecutorial breach is punishable should be a separate consideration for those responsible for professional conduct. It should not divert our attention from the singular result to be effected by the remedy being sought, *i.e.,* to return to the defendant his cast off cloak of constitutional protections. In short, the remedy should be no more a retaliation against the State than it should be a guerdon for the defendant.

In nearly every instance a defendant will be allowed all of his constitutional safeguards — including the presumption of innocence — if he is permitted to withdraw his guilty plea. We do not agree that the State's non-compliance, whether intentional or inadvertent, provides a defendant with an election of remedies. Obviously the State could not specifically enforce an agreement by requiring a defendant to plead guilty if before doing so he had a change of heart. Our sense of justice is not affronted by denying that privilege to the defendant as well.

We cannot overlook the fact that a prosecutor has a profound obligation to society. If prior to the consummation of a plea bargain he foresees that it might endanger society, he has not merely the right, but the responsibility, to withdraw from the agreement. Plea bargains should not be specifically enforced in the absence of affirmative evidence of prejudice arising from the bargain, which prejudice cannot be remedied by permitting the defendant to withdraw his plea and commence anew. Only upon a finding of such inexpiable prejudice should a defendant be permitted the option of specific performance by the trial court, and even then a full record should be made anticipating the possibility of appellate review. No showing of irremediable prejudice was made by Appellant in the instant case. We will therefore reverse the verdict of guilty found upon the

guilty plea and remand the case for a new trial. By so doing we return Appellant to his original position. The State, of course, is not limited to proving the single charge to which Appellant pleaded guilty but may present evidence as to all charges originally preferred against Appellant.

This opinion should not be interpreted as condoning casual breaches of hasty agreements. All foreseeable consequences of a plea bargain should be considered by counsel on behalf of society as earnestly as they are by counsel on behalf of a defendant. An attorney, or for that matter anyone else, has very little to recommend him if faith is lost in his assurances that he will live by his word. Finally, at the time of performance, compliance with the agreement must be to the letter and in good faith. The State may not sell the cow and hope to continue to sup upon her milk.

> *Judgment reversed; plea of guilty stricken; case remanded for new trial.*
>
> *Costs to be paid by the Mayor and City Council of Baltimore.*