2010 Ark. 77

**STATE of Arkansas, Appellant,**

v.

**Jason Michael JOHNSON, Appellee.**

**No. CR 09–644.**

Supreme Court of Arkansas.

Feb. 18, 2010.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., for appellant.

Lingle Law Firm, by: James G. Lingle, Rogers, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

The State of Arkansas brings this appeal from an order of the Benton County Circuit Court dismissing the charges against appellee Jason Johnson. The circuit court agreed with Johnson that he had complied with and detrimentally relied on the terms of an agreement with the prosecutor to divert his charges in exchange for obtaining certain results on a psychiatric evaluation. In doing so, the court rejected the State's argument that specific performance of the agreement was not an appropriate remedy. The State's appeal is taken pursuant to Ark. R.App. P.-Crim. 3.

Johnson was arrested on October 18, 2007, for violating Arkansas Code Annotated section 5–27–602 (Repl.2006), which makes it a felony to knowingly distribute, possess, or view matter depicting sexually explicit conduct involving a child. Before a felony information was filed, the deputy prosecutor, Mike Armstrong, made an offer to Johnson that, if Johnson would obtain a mental evaluation and the results showed that Johnson did not have characteristics of a pedophile, the State would "divert" the case.[1]

At his own expense of $300.00, Johnson underwent a psychiatric evaluation with Dr. Robin Ross on January 24, 2008. Dr. Ross's report examined Johnson's personal, psychiatric, medical, and social histories, as well as his legal history, which indicated that he had never been in legal trouble before the current charges. Based on her evaluation, Dr. Ross concluded that Johnson did not give a history that would be consistent with the traits of a pedophile.

Despite this evaluation, and before reviewing its results, Armstrong informed Johnson that the offer was being revoked. Armstrong asserted that, at the time the offer had been made, he had not reviewed the material allegedly on Johnson's computer and would not have made the offer if he had known the nature of the material. A felony information was filed on Febru-

---

1. Although the parties stipulated to the underlying facts of this agreement, they do not explain what such a "diversion" would have entailed.

ary 13, 2008, charging Johnson with knowingly possessing and viewing video images that depicted children engaging in sexually explicit conduct.

On October 17, 2008, Johnson filed a motion to enforce the agreement the prosecution had earlier offered.[2] In his motion and brief in support thereof, Johnson asserted that the prosecutor's agreement to divert his case should be specifically enforced because he detrimentally relied on the prosecutor's promise. The State responded that the circuit court should not order specific enforcement of a preliminary offer because the court had never accepted the offer, and Johnson had failed to demonstrate that he had been prejudiced by the withdrawal of the offer. The State noted that, even if the court found that the statements made by Johnson to Dr. Ross were prejudicial, the proper remedy would be to exclude the statements from the trial.

The circuit court held a hearing on Johnson's motion to enforce the agreement on November 14, 2008, at which time the parties stipulated to the above facts. The court took the motion under advisement, and the parties filed supplemental briefs on the issue of enforcing the agreement. After hearing arguments from the State and the defense at a later hearing on February 4, 2009, the circuit court, relying on *Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432 (1977), concluded that "[a] deal was made, and the defendant followed through," and that therefore this was "a case in which the term 'equitable relief' should be applied, and in my opinion ... the defendant is deserving of equitable relief. He made a deal with the prosecutor, fulfilled his terms of the deal, and now the prosecutor wants to renege after acceptance and performance."

The court further found that Johnson had detrimentally relied on the State's offer: "I'm finding $300.00, going in for an evaluation, submitting the evaluation and everything he said to the [psychiatrist], a complete waiver of his Fifth Amendment rights, that's all detrimental." The court concluded, "The prosecutor made a deal, and they're going to live up to it. Now, that is my ruling, and I am going to grant the equitable relief by dismissing these charges."[3]

The circuit court entered an order of dismissal on March 17, 2009, finding and ordering that Johnson's "motion to specifically enforce the offer of the state is granted because the defendant detrimentally relied on the State's offer." The State filed a timely notice of appeal on April 15, 2009.

Before addressing the merits of this case, the court must first determine whether this issue is properly before us under Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. The principles governing our acceptance of appeals by the State in criminal cases are well established: the State's ability to appeal is not a matter of right; rather, it is limited to those cases described under Ark. R.App. P.-Crim. 3; *State v. Crawford*, 373 Ark. 95, 281 S.W.3d 736 (2008); *State v. Joslin*, 364 Ark. 545, 222 S.W.3d 168 (2006). Under Rule 3, we accept appeals by the State when our holding would establish important precedent or would be important to the correct and uniform administra-

---

2. Johnson's motion also incorporated a motion to suppress his statement, a motion to compel discovery, and a motion for funds for expert assistance. These issues, however, are not at issue on appeal.

3. The prosecutor asserted, and the court agreed, that the court lacked jurisdiction to order the State to divert the case, which had been the original agreement. Therefore, the court ordered the charges dismissed.

tion of the criminal law. *See State v. Joslin, supra.* We have only taken appeals which are narrow in scope and involve the interpretation of the law. *State v. Warren,* 345 Ark. 508, 49 S.W.3d 103 (2001); *State v. Banks,* 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995).

This case concerns the authority of the prosecuting attorney to withdraw an offer—in this case, an offer of diversion, although in other cases it could conceivably be an offer of dismissal—prior to the filing of charges, but after the defendant has acted upon the offer. The State frames the issue as follows:

> whether a trial court may compel the State to adhere to the terms of an agreement with a defendant which the evidence subsequently reveals is unwise—and ultimately to dismiss the case with prejudice—even though the defendant has not entered a plea in reliance on the agreement and cannot demonstrate that he otherwise relied on the agreement in a manner which prejudiced his right to a fair trial, and any reliance could be remedied by an order limiting the use of evidence by the State.

Johnson disagrees, asserting that the law in this area has been "settled" since this court's 1977 decision in *Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977). Therefore, he contends, there is "no reason for the court to take this case 'to maintain uniformity throughout the State.'" However, as is discussed below, *Hammers,* while instructive, is not exactly on point; in fact, there do not seem to be any Arkansas cases that are precisely on point, as evidenced by the fact that both parties cite numerous cases from other jurisdictions. The State frames the issue in this case as whether Johnson detrimentally relied on the offer of diversion; Johnson contends on appeal that detrimental reliance is irrelevant and is not the appropriate test.

Thus, we must determine whether detrimental reliance is required for enforcing agreements such as the one in this case. Assuming, moreover, that detrimental reliance is required, there are no Arkansas cases defining that term in this context. Accordingly, the correct and uniform administration of the criminal law requires our review of this case.

Our standard of review in this case has two components: We review the trial court's findings of fact for clear error, giving due weight to inferences drawn by the circuit court, and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *State v. Kelley,* 362 Ark. 636, 210 S.W.3d 93 (2005); *State v. Howard,* 341 Ark. 640, 645, 19 S.W.3d 4, 8 (2000). Questions of law, however, are reviewed de novo. *Scissom v. State,* 367 Ark. 368, 240 S.W.3d 100 (2006) (citing *Brown v. Pine Bluff Nursing Home,* 359 Ark. 471, 199 S.W.3d 45 (2004)).

In its sole point on appeal, the State argues that the circuit court erred by granting Johnson's motion to specifically enforce the agreement because there was no detrimental reliance on the agreement on Johnson's part. Citing *Caldwell v. State,* 295 Ark. 149, 747 S.W.2d 99 (1988), the State urges that specific performance is not an appropriate remedy when Johnson failed to show that he detrimentally relied on the State's offer. The State goes on to cite numerous cases from other jurisdictions in support of its contention that a party, including the State, may withdraw from a plea bargain prior to acceptance of the plea by the court or detrimental reliance on the part of the defendant.

In *Caldwell v. State, supra,* the appellant was convicted of second-degree battery. On appeal, he argued that he was entitled to the benefit of a plea bargain made after charges were filed but from

which the state withdrew prior to trial. The offer, extended by a prosecuting attorney toward the end of his term in office, was a recommendation for a sentence of five years' probation in exchange for a plea of guilty to first-degree battery and aggravated assault. [7]A new prosecutor took office before Caldwell could enter a plea, and that prosecutor refused to honor the earlier offer. Caldwell's motion to enforce the agreement was denied, and he proceeded to trial and was convicted of second-degree battery. *Caldwell*, 295 Ark. at 150–51, 747 S.W.2d at 100.

On appeal, Caldwell argued that he was entitled to specific performance of the plea agreement. This court rejected his argument, noting that the majority of jurisdictions to consider a similar question had concluded that "if the defendant has not pleaded or detrimentally relied upon the agreement, the state is free to withdraw." *Id.* at 151, 747 S.W.2d at 101 (citing *State v. Edwards*, 279 N.W.2d 9 (Iowa 1979), and *Wynn v. State*, 22 Md.App. 165, 322 A.2d 564 (1974)). The court further rejected Caldwell's claim that he had proven that he detrimentally relied on the agreement, noting that the only detriment alleged was that he stopped preparing his defense after reaching the agreement with the State. *Id.*

Caldwell also argued that it was "fundamentally unfair to allow the state to renege, whether or not he [had] relied." *Id.* This court again disagreed, noting first that if the trial court chose not to accept the plea bargain, it was of no effect. *Id.* at 151–52, 747 S.W.2d at 101. Because the defendant and State have no power to bind the court to accept the agreement, this court concluded that it was "illusory to say the State is bound by such an agreement before it is consummated by the acceptance of a guilty plea by the court." *Id.* at 152, 747 S.W.2d at 101. Second, the court

stated that, "if there is no demonstrable prejudice [8]resulting from the withdrawal we fail to see how it is unfair to allow it." *Id.* The court concluded as follows:

We do not mean to suggest by this discussion that if an accused has detrimentally relied to any degree or in any manner upon a plea bargain he may have specific performance of it prior to entering a plea based upon it. We will cross that bridge when we come to it. Withdrawal under those circumstances may affect only the evidence available to the prosecution. Here we hold only that absent a showing of acceptance of a plea of guilty based upon agreement and absent a showing of other detrimental reliance upon the agreement, Caldwell was not entitled to enforcement of it.

*Id.*

In the present case, the State relies on *Caldwell v. State* and cases from other jurisdictions holding that a defendant must demonstrate some detrimental reliance on a plea agreement before he might lay claim to specific enforcement as a remedy for a breach of the agreement by the prosecuting attorney. *See Gov't of the Virgin Islands v. Scotland*, 614 F.2d 360 (3d Cir.1980) (no error in district court's refusal to specifically enforce a plea agreement where the defendant did not allege that he had detrimentally relied on the government's offer); *State v. Bogart*, 57 Wash.App. 353, 788 P.2d 14 (1990) (Where defendant did not comply with the terms of the plea agreement, there was no error in the trial court's refusal to accept defendant's attempt to plead guilty.); *United States v. Wessels*, 12 F.3d 746 (8th Cir. 1994) (Where consummation of plea agreement was contingent upon the district court's approval, defendant could not show that the government had gained an unfair advantage over him by withdrawing the plea offer.); *State v. O'Leary*, 128 N.H.

661, 517 A.2d 1174 (1986) (A defendant is not entitled to specific performance of a plea agreement unless he fulfills his part of the bargain; it is the act of entering a guilty plea and thereby waiving certain constitutional guarantees in reliance on the plea agreement that triggers the concomitant responsibility on the part of the prosecutor to honor his side of the bargain.).

The State's reliance on these cases is misplaced, however. The critical feature that distinguishes *Caldwell, supra,* and the cases cited by the State from the present case is the fact that the instant case *does not involve a plea agreement* entered into after the defendant was charged with a crime. Instead, this case involves an offer to divert or dismiss the charges that was extended before the State ever filed a felony information against Johnson. An agreement not to prosecute, while in some respects analogous to a plea offer, is quite different. As explained in *Lampkins v. Commonwealth,* 44 Va.App. 709, 607 S.E.2d 722 (2005), an exchange of cooperation for either immunity or an agreement not to prosecute "is different from a plea bargain in that it can never be formalized by a plea of guilty. On the contrary, the very nature of the agreement is the promise on the part of the government to do nothing." *Lampkins,* 44 Va.App. at 724, 607 S.E.2d at 729 (quoting *Plaster v. United States,* 789 F.2d 289 (4th Cir.1986)).

Other jurisdictions have commented on the distinctions between the various types of agreements between the State and a defendant. For example, in *State v. Howe,* 2 Neb.App. 766, 771, 514 N.W.2d 356, 361 (1994), the Nebraska Court of Appeals pointed out the "difference between a plea bargain, a statutory immunity agreement, and other bargains that are neither plea bargains nor statutory immunity agreements." A "pure plea bargain agreement" involves "a suspect who has been apprehended for allegedly committing a crime and, rather than face the prospects of an extended trial and a punishment of undetermined severity if convicted, decides to plead guilty to charges mutually acceptable to him and the prosecutor." *Id.* at 772, 514 N.W.2d at 361 (quoting *United States v. Minnesota Min. & Mfg. Co.,* 551 F.2d 1106, 1111–12 (8th Cir.1977)). In such cases, the trial court has discretion to accept or reject a plea agreement. *See State v. Mucci,* 150 Ohio App.3d 493, 498, 782 N.E.2d 133, 137 (2002). Generally, a plea bargain may only be enforced after it has been accepted by a court; until that point, neither the defendant nor the State is bound by the agreement. As stated in *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), a plea bargain "standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *See also* Ark. R.Crim. P. 26.1(a) (A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right before it has been accepted by the court.); *Caldwell v. State,* 295 Ark. at 151–52, 747 S.W.2d at 101 (If the guilty plea has not been entered by the court, the State is free to withdraw.).

A second type of agreement is a statutory immunity agreement. As opposed to a plea agreement, it is entirely a creature of statute and "has no existence outside the context of the constitutional privilege against compelled testimonial self-incrimination." *Howe,* 2 Neb.App. at 772, 514 N.W.2d at 361 (quoting *Butler v. State,* 55 Md.App. 409, 422, 462 A.2d 1230, 1236 (1983)). *See also State v. Mucci, supra.* Because the purpose of such immunity is to avoid application of the

Fifth Amendment privilege against self-incrimination, a circuit court may, if a witness refuses to testify in compliance with such an agreement, compel the witness's testimony. *Mucci,* 150 Ohio App.3d at 498, 782 N.E.2d at 138.

■ A third category consists of those "bargain[s] which involve[ ] something other than statutory immunity or a pure plea bargain," such as "cases where the prosecutor agreed to limit prosecution in some manner in consideration for the defendant's cooperating in some manner." *Howe,* 2 Neb.App. at 773, 514 N.W.2d at 362. The rationale behind such agreements focuses on the prosecutor's discretion to initiate a criminal prosecution. *Mucci,* 150 Ohio App.3d at 499, 782 N.E.2d at 138. Such "informal immunity" or "cooperation immunity" agreements are generally interpreted according to ordinary contract principles. *See State v. Edmondson,* 714 So.2d 1233, 1237 (La. 1998); *United States v. Johnson,* 861 F.2d 510, 512 (8th Cir.1988) (citing *United States v. Brown,* 801 F.2d 352, 354 (8th Cir.1986)); *Bowers v. State,* 500 N.E.2d 203, 203–04 (Ind.1986) (Noting that, while such a dispute is "not necessarily resolved by abstract application of contract law, the principles of contract formation, breach, and remedies can provide helpful guidance.").[4] In *United States v. Johnson, supra,* the Eighth Circuit explained as follows:

A cooperation agreement is somewhat analogous to a plea agreement except that the former is a "prosecutorial agreement, the unviolability of which rested completely in the province of the government prosecutors, who have the sole power and responsibility to institute criminal proceedings." *United States v. Minnesota Mining & Mfg. Co.,* 551 F.2d 1106, 1112 (8th Cir.1977). With an agreement not to prosecute, *parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity. United States v. McGovern,* 822 F.2d 739, 745 (8th Cir.1987).

*Johnson,* 861 F.2d at 512 (emphasis added). A cooperation agreement or an agreement not to prosecute is thus clearly distinguishable from a plea bargain-agreement, where the defendant's entry of the plea forms the consideration.

The agreement in the present case is clearly not a "pure plea agreement" or a statutory-immunity agreement. It falls squarely into the third category described above. Here, the prosecuting attorney agreed to divert Johnson's case and not file formal charges if Johnson would obtain a psychiatric evaluation that indicated Johnson was unlikely to be a pedophile. Thus, there was an agreement not to prosecute in exchange for the defendant's agreement to undergo an evaluation.

The most pertinent Arkansas case on the question of equitable enforcement of an agreement not to prosecute is *Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977), on which appellant Johnson relies. In that case, the defendant, Pamela Hammers, was charged, along with

---

4. Other courts have refused to apply contract principles to agreements between prosecutors and defendants. In *State v. Doe,* 103 N.M. 178, 704 P.2d 432 (1984), the New Mexico Supreme Court declined to impose principles of contract upon the plea-bargaining process because "[s]uch principles, borrowed from the commercial world, are inapposite to the ends of criminal justice." *Doe,* 103 N.M. at 181, 704 P.2d at 435. The *Doe* court went on, however, to note that agreements not to prosecute "may be enforced if they are duly consummated and comply with the requirements of due process," and also drawing upon "general equitable principles." *Id.* (citing *Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977)).

James Stephens, with murder. The prosecuting attorney reached a deal with Hammers whereby she was to testify against Stephens at his trial, even though it meant waiving her privilege against self-incrimination. In exchange, the prosecutor agreed to enter a nolle prosequi and grant her total immunity from the charges against her. In accordance with that agreement, Hammers gave a detailed statement about the crime and was prepared to waive her rights against self-incrimination and testify at Stephens's trial. *Id.* at 591–92, 550 S.W.2d at 435.

Stephens was scheduled to go to trial on November 4, 1975; however, his trial was continued because a key witness disappeared on the eve of trial. Hammers's attorney contacted the prosecutor at that time and ascertained that they "still had a deal." *Id.* At all times, Hammers was ready and willing to testify against Stephens. *Id.*

The following March, Stephens made a complete confession to the crime to the prosecuting attorney and changed his plea from not guilty to guilty of second-degree murder; in addition, he agreed to testify against Hammers. *Id.* at 592, 550 S.W.2d at 435. The State notified Hammers that it was withdrawing from the agreement and planned to prosecute her for murder. In so doing, the prosecutor contended that the previous deal was "binding only if and when [Hammers] took the witness stand and testified against Stephens, but that when Stephens pleaded guilty, the agreement did not require [the prosecutor] to grant immunity or to nolle prosequi the charges." *Id.* The prosecutor returned Hammers's statement to her and erased the tape on which it had been recorded. Moreover, when the charges against Hammers went to trial, the State did not use the statement against her. *Id.*

On appeal, this court first noted that there was no evidence that Hammers had not acted in good faith or that she had been anything less than ready and willing to testify against Stephens. *Id.* at 593, 550 S.W.2d at 435–36. The court also pointed out that the "immunity agreement" into which Hammers and the State had entered was not based on any statutory authority and not approved by the court, and therefore, she had "only an equitable, not legal, right to immunity or mercy." *Id.* at 595, 550 S.W.2d at 436–37. The court continued as follows:

It is only appropriate that an accomplice who, under an agreement with the prosecuting attorney, approved by or made known to the court, that he should be immune from prosecution, testifies fully and truthfully as to the whole matter charged, be vested with an equitable right to the entry of a nolle prosequi or appropriate clemency.

Clearly a promise of immunity approved by, or with the consent of, the court, should be upheld. Transactional immunity, i.e., full immunity from prosecution for the offense to which the testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege against self-incrimination, since immunity from use of the testimony, and evidence derived from it, affords Fifth Amendment protection. Ordinarily, in the absence of statute, the public prosecutor is not authorized to grant immunity and it can be granted only with the approval of the court pursuant to express statutory authority. But even when the agreement is unauthorized, an accomplice who actually testified against a confederate voluntarily and made a full, true and candid disclosure of all the circumstances attending the transaction in question, in good faith, incriminating both the confederate and himself, has been held to

have an equitable claim or right to mercy in some form.

*Id.* at 595–96, 550 S.W.2d at 437 (internal citations omitted).

This court noted that, because Hammers's agreement with the prosecuting attorney was not a statutory grant of immunity and had not been approved by the trial court, her claim had to be "viewed as one to relief on equitable principles." *Id.* at 598, 550 S.W.2d at 439. Accordingly, Hammers was "equitably entitled to have her agreement with the prosecutor enforced if she complied with its terms in good faith and made a full, fair, and free disclosure of all facts pertaining to the crimes charged, even though that requires barring her prosecution for the crimes." *Id.* at 600, 550 S.W.2d at 439. The court therefore remanded the matter to the circuit court for a factual determination on whether Hammers had complied with the terms of the agreement and was thus entitled to equitable relief. *Id.* at 604, 550 S.W.2d at 442.

While instructive, *Hammers* does not squarely answer the critical question presented in this case: whether Johnson must have detrimentally relied on an agreement not to prosecute in order to hold the State to its obligations under that agreement. In an analogous case from Nebraska, *State v. Wacker*, 268 Neb. 787, 792–93, 688 N.W.2d 357, 362 (2004), the defendant entered into a "cooperation agreement" before charges were filed by which he agreed to give a statement detailing his involvement in an alcohol-related automobile accident if the State would file the lesser charge of motor-vehicle homicide instead of the greater charge of manslaughter. After he gave a statement in which he admitted to drinking before driving in the accident that killed a friend, the State filed an information that charged him with manslaughter rather than motor-vehicle

homicide. Wacker filed a pretrial motion to compel amendment of the information to the lesser charge, but the circuit court denied his motion, finding that the State had offered a plea agreement and that Wacker had not pleaded to anything. The trial court did find, however, that Wacker had made the statement in reliance on the offer and agreed to suppress the confession. *Wacker,* 268 Neb. at 790–91, 688 N.W.2d at 361.

On appeal, Wacker argued that he did not agree to a plea agreement but had instead entered into a cooperation agreement with which the State should have been bound to comply. The Nebraska Supreme Court agreed, noting that plea agreements and cooperation agreements "are different. The procedural rules are different. Other than the very general notion of some 'quid pro quo,' the ... phenomena are distinct." *Id.* at 792, 688 N.W.2d at 362 (citing *State v. Copple*, 224 Neb. 672, 687, 401 N.W.2d 141, 153 (1987)). The court went on to note that the "principle for enforcing a cooperation agreement arises under the Due Process Clause of the 14th Amendment," *id.* at 793, 688 N.W.2d at 362, continuing as follows:

We believe that, as a matter of fair conduct, the government ought to be required to honor such an agreement when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government.

The courts have developed a concept of "nonstatutory immunity" whereby the courts will enforce informal or procedurally flawed grants of immunity on equitable grounds. These cases indicate that where the government has entered

into an agreement with a prospective defendant and *the defendant has acted to his detriment or prejudice in reliance upon the agreement,* as a matter of fair conduct, the government ought to be required to honor such an agreement.

*Wacker,* 268 Neb. at 793, 688 N.W.2d at 362 (emphasis added) (quoting from *State v. Copple,* 224 Neb. at 688, 401 N.W.2d at 153) (some internal punctuation omitted). *See also State v. Howe,* 2 Neb.App. at 774, 514 N.W.2d at 362 (Cooperation agreements are enforceable on equitable grounds if an agreement was made, the defendant performed what he or she promised, and, in so performing, the defendant acted to his or her detriment or prejudice.).

Thus, a substantial number of cases addressing agreements not to prosecute appear to require some reliance on the agreement by the defendant to his detriment. *See Wacker, supra; United States v. Streebing,* 987 F.2d 368, 372–73 (6th Cir.1993) (Defendant had to demonstrate that he had relied on the government's promise to his detriment before the promise would be specifically enforceable.); *Rowe v. Griffin,* 676 F.2d 524, 528 (11th Cir.1982) (When a promise induces a defendant to waive his Fifth Amendment rights by testifying or otherwise cooperating with the government to his detriment, due process requires that the prosecutor's promise be fulfilled.); *State v. Parkey,* 471 N.W.2d 896, 898 (Iowa App.1991) (In the absence of a showing that the defendant detrimentally relied upon an agreement with the prosecutor, dismissal was not warranted.); *People v. Reagan,* 395 Mich. 306, 318, 235 N.W.2d 581, 587 (1975) (Where defendant was prejudiced by submitting to polygraph in exchange for an agreement that his prosecution would be dismissed, trial court erred in refusing to enforce the agreement.).

While the majority of cases appear to require detrimental reliance before a cooperation agreement will be enforced, we note that there are a number of cases that make no mention of detrimental reliance. For example, in *Bowers v. State,* 500 N.E.2d 203 (Ind.1986), the Indiana Supreme Court enforced an agreement not to prosecute, offered in exchange for the defendant's provision of specific information, based on the notion that "the promise of a state official in his public capacity is a pledge of the public faith and is not to be lightly disregarded." *Bowers,* 500 N.E.2d at 204. The court held that, by reneging on its promise not to prosecute, "the prosecutor's conduct impaired the reliability and usefulness of an important prosecutorial tool and tended to undermine the integrity and credibility of the criminal justice system to an extent compelling reversal in this case." *Id. See also State v. Davis,* 188 So.2d 24, 27 (Fla.App. 1966) (Where defendant agreed to plead guilty to manslaughter if a lie detector test was not in his favor, and the State agreed to dismiss the charges if the test showed he was telling the truth, the State was bound by its "pledge of public faith— a promise made by state officials—and one that should not be lightly disregarded."); *Jackson v. State,* 358 Md. 259, 275–76, 747 A.2d 1199, 1208 (2000) (The State is bound to adhere to an agreement not to prosecute so long as the defendant performs his part where the agreement does "not contemplate that the defendant do anything more than cooperate with the State.").

We conclude that the better rule is that the defendant must demonstrate that he or she has detrimentally relied upon an agreement not to prosecute. Application of this rule can be harmonized with both *Caldwell v. State,* 295 Ark. 149, 747 S.W.2d 99 (To enforce a plea agree-

ment, the defendant must have both performed and detrimentally relied.), and *Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432 (An agreement not to prosecute can be equitably enforced in certain circumstances.).[5] We therefore hold that where the State has entered into an agreement not to prosecute with a prospective defendant and the defendant has performed and acted to his detriment or prejudice in reliance upon that agreement, the government must be required to honor such an agreement.

█ In the instant case, the parties stipulated that the State agreed not to prosecute Johnson if he obtained a psychiatric evaluation that concluded he did not have characteristics of a pedophile. There can also be no question that Johnson upheld his end of the agreement by undergoing an evaluation and producing the information sought by the State. The question left to be determined, then, is whether, in doing so, Johnson relied on the agreement to his detriment or prejudice.

█ The question of whether a party has relied on an agreement to his detriment is a question of fact. *See, e.g., Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996); *Taylor v. Eagle Ridge Developers, LLC*, 71 Ark. App. 309, 29 S.W.3d 767 (2000). We review the circuit court's factual findings for clear error. *See, e.g., Hinojosa v. State*, 2009 Ark. 301, 319 S.W.3d 258. In this case, the circuit court made specific factual findings that Johnson had detrimentally relied on the State's promise not to prosecute in that he

had spent $300.00 on the mental evaluation and had made statements during that evaluation that compromised his Fifth Amendment privilege.

The State urges that Johnson's reliance on the agreement was not to his detriment because he could be restored to his "pre-agreement" position by reimbursement of the $300.00 and by an order precluding the State from using any of his statement at trial. In addition, the State argues that the trial court incorrectly concluded that Johnson's Fifth Amendment rights were implicated because nothing that he said in his statement to Dr. Ross was self-incriminatory. Therefore, the State contends that the trial court erred in finding that Johnson detrimentally relied upon the agreement.[6]

Johnson responds that he cannot be put into his pre-bargain position simply by suppression of his statement at trial. Citing *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), he argues that the Fifth Amendment not only permits his refusal to testify against himself, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." He argues that the information provided to the State in his psychiatric evaluation cannot be "undone," in that the State now knows, as per his statements to Dr. Ross, that he has downloaded pornography, along with other intimate details about his life.

---

5. Although the *Hammers* court did not expressly mention or require detrimental reliance on the agreement, we later characterized *Hammers* as, "in effect, appl[ying] the doctrine of estoppel," which of course requires the presence of detrimental reliance. *Foote's Dixie Dandy, Inc. v. McHenry*, 270 Ark. 816, 824, 607 S.W.2d 323, 326 (1980).

6. The State also suggests that, to the extent there were any incriminating statements made in the report to Dr. Ross, such statements would be protected by the privilege afforded under Arkansas Rule of Evidence 503. It does not appear that the State made this argument below, and accordingly, we do not consider it on appeal.

Moreover, as Johnson argued below, while the State would likely have been precluded from using the statement in its case in chief, it could certainly cross-examine him with it. In *State v. Wacker*, 268 Neb. 787, 688 N.W.2d 357, the Nebraska Supreme Court pointed out a similar possibility—that a statement made in reliance on a promise of a lesser charge poses a risk for the defendant if he chooses to testify at trial. "Thus, the statement's suppression cannot put [the defendant] back in the status quo." *Wacker*, 268 Neb. at 796, 688 N.W.2d at 364. Because mere suppression would not necessarily restore Johnson to his pre-bargain position, the trial court did not clearly err in concluding that he had relied on the agreement to his detriment.

■ The State raises one final argument, contending that the trial court had no authority to dismiss the charges pursuant to *State v. Vasquez–Aerreola*, 327 Ark. 617, 940 S.W.2d 451 (1997), and that such a dismissal would violate the separation-of-powers doctrine. However, the State did not raise this argument below, and thus we will not address it for the first time on appeal. *See State v. Grisby*, 370 Ark. 66, 257 S.W.3d 104 (2007) (Where State failed to raise a separation-of-powers argument below, it was not preserved for appellate review.).

Affirmed.

HANNAH, CJ., dissents.

HANNAH, CJ., dissents.

I respectfully dissent. The appeal should be dismissed because the State is not entitled to an appeal, pursuant to Ark. R App. P.–Criminal 3(c).

Appellee complied in good faith with the terms of the agreement to forbear prosecution and is entitled to enforce the agreement on its terms.[1] Detrimental reliance was not a term of the contract and is irrelevant to the analysis. Under *Hammers*, 261 Ark. 585, 600, 550 S.W.2d 432, 439 (1977), a criminal defendant is "equitably entitled to have his or her agreement with the prosecutor enforced if he or she has complied with its terms in good faith." *Hammers* controls and as settled law deprives the State of its opportunity to appeal under Arkansas Rule of Appellate Procedure–Criminal 3 because the correct and uniform administration of the law is not at issue. *See* Ark. R.App. P.-Crim. 3(c).

Detrimental reliance applies only in the absence of a binding agreement with the prosecutor. It may permit a criminal defendant to enforce a promise, for example, in plea negotiations. In that case, although the prosecutor may make an offer, and the criminal defendant may express a willingness to accept the offer, no binding agreement can be created between the prosecutor and the criminal defendant because the plea must be approved by the circuit court. *See Caldwell v. State*, 295 Ark. 149, 152, 747 S.W.2d 99, 101 (1988) ("The parties have no power to bind the court, and thus it is illusory to say the state is bound by such an agreement before it is consummated by the acceptance of a guilty plea by the court."). In such a case, the criminal defendant must show detrimental reliance to enforce the plea. *Id.*, 747 S.W.2d at 101 ("[A]bsent a

---

1. I note that the prosecutor attempted to "revoke" the offer; however, the offer had been accepted, and it was too late to revoke it. The offer was made before the prosecutor reviewed the material on the computer and determined its seriousness. I find it troubling that such an offer was made without a careful review of the evidence; however, the prosecutor is now bound by his agreement.

showing of acceptance of a plea of guilty based upon agreement and absent a showing of other detrimental reliance upon the agreement, Caldwell was not entitled to enforcement of it.").

In the present case, the prosecutor made an offer to forbear prosecution, a right held by the prosecutor that in no way involved the court. *See, e.g., Nance v. State,* 323 Ark. 583, 595, 918 S.W.2d 114, 119 (1996); *see also, Gerstein v. Pugh,* 420 U.S. 103, 118, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (noting that there is no judicial review of the decision to prosecute). Once the prosecution's offer was accepted, and appellee performed, he was equitably entitled to enforce the agreement on its terms. *Hammers,* 261 Ark. at 600, 550 S.W.2d at 439. Again, the terms of the agreement did not require him to show detrimental reliance.

I agree that the circuit court was correct in enforcing the terms of the contract; however, the issue on appeal was settled in *Hammers.* I would hold that the State's appeal be dismissed because it was not entitled to an appeal under Rule 3.