Cite as 2019 Ark. App. 532

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-18-1027

| | | |
|---|---|---|
| KEITH SAVAGE | | **Opinion Delivered:** November 13, 2019 |
| | APPELLANT | |
| | | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 75SCR-16-47] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | HONORABLE JERRY D. RAMEY, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

Keith Savage appeals the Yell County Circuit Court's decisions to deny his motion to enforce an agreement not to prosecute and to admit laboratory reports over his objection. We affirm.

### I. *Relevant Facts*

On August 9, 2016, the prosecuting attorney for the the Yell County Circuit Court filed a felony information against Savage charging him with three counts of threatening a judicial officer, a class B felony. On March 2, 2017, Savage entered a guilty-plea statement and waived his right to a jury trial. The same day, Savage was placed on probation for a period of ninety-six months, fined $1000, and assessed $150 in costs.

The State filed the first petition to revoke Savage's probation on June 14, 2017, due to his failure to report for a scheduled office visit, failure to report a change of address, and

evasion of supervision. On October 5, 2017, the prosecuting attorney nolle prossed the petition.

On November 28, 2017, the prosecution filed another petition to revoke the probated sentences based on Savage's failure to report, failure to report a change of address, evasion of supervision, failure to pay fees, and "numerous criminal federal charges." On January 4, 2018, Savage waived formal arraignment and pleaded not guilty.

On April 2, 2018, the prosecutor filed a motion for nolle prosequi. During the hearing, the circuit court clarified that the petition to revoke would be nolle prossed, "and there is going to be an agreement to Act 423, sanctioned by the probation officer" and that "as a part of this, Mr. Savage is waiving the request for a hearing on 423 to the circuit court?" Savage's attorney agreed that "as a condition of the non pros he is going to be sanctioned under 423 by probation, and he is waiving the hearing." The court order for nolle prosequi was entered the same day.

On April 24, 2018, the State refiled the petition to revoke Savage's probation. The only change to the petition was in the description of the "numerous criminal federal charges," which now set forth "[t]he defendant was included in a federal indictment for the violation of Title 21, United States Code, section 841(a)(1), and Title 21, United States, Code Section 841(b)(1)(A)[.]"

On July 5, 2018, Savage filed a motion to enforce the agreement and to dismiss the felony information. Savage contended that the State's April 24 refiling of the petition to revoke violated his due-process rights because the State offered the agreement not to prosecute, and in exchange, Savage agreed to subject himself to administrative sanctions

under Act 423, and he waived his right to a revocation hearing; thus, he detrimentally relied on the agreement. [1] Savage also noted that on April 2, the State's main witness—a drug-task-force agent who would have provided testimony regarding the search of Savage's home and seizure of evidence that led to the federal charges—was unavailable. Savage alleged that the State "used trickery to obtain an unfair advantage[.]" The State responded that there was no agreement not to prosecute and that because Savage had never been sanctioned according to Act 423, he had not relied on any agreement to his detriment; thus, he could not show prejudice. The State contended that it exercised the option to refile pursuant to a "standard nolle pros." The State also requested a continuance and explained that a necessary witness—the same drug-task-force agent who had been unavailable on April 2—was again unavailable. The court granted the continuance to August 2.

At the August 2 hearing, Savage explained that on April 2 he was ready to proceed, but the State did not have the drug-task-force agent there to testify about the new federal charges against him. The new federal charges were stated as a ground for revocation, and so the State agreed to sanction Savage administratively under Act 423, and nolle pros the charges. As a part of the agreement, Savage waived his right to request a hearing. Savage asserted that he proved that there was an agreement and that he acted to his detriment in relying on the agreement; specifically, part of the agreement was that he would be committed to "jail days," and he suffered prejudice as a result because he gave up the right

---

[1]Savage also asserted that he detrimentally relied on the agreement because he discharged his experienced attorney, whom he was unable to obtain again; however, later, Savage was able to retain the same attorney.

3

to call witnesses and cross-examine the State's witnesses. Savage contended that the State reneged on the agreement when it refiled the petition to revoke less than a month later.

The State responded that Savage did not offer evidence that there was an agreement, that he acted to his detriment, or that he suffered prejudice by the State's actions. The State contended that there was no agreement between the parties that Savage would forgo his right to a bench trial and that a nolle prosequi was not an unconditional dismissal of the charges. The State contended that when a defendant accepts a plea offer, "you go through those and make sure they understand what they are doing. If this had been reversed, and we were trying to enforce this as an agreement, he's not waived any constitutional rights. He stands before the court today just like it was his first time. He's given up nothing." The State asserted that "the agreement they want enforced, nobody can seem to agree what it was, because it was not written down. If he wanted to put something on the record to make sure that he waived the rights and he was prejudiced, then that was their opportunity to do that in front of you. But that is not what we agreed to do because there was no agreement." The State summarized that "there was a determination made that we couldn't go forward at the time with one of the issues before this court" and as a result, the State nolle prossed the petition to revoke to refile later.

Savage responded that he gave up the right to appeal the sanctions, which is set forth in Act 423, and that "whatever probation came down with, be it one day or 180 days, he was going to take and not appeal. He had an absolute right to do so, and he gave up that right." Savage asserted that "this simply turned into a continuance for the State to directly refile the exact same petition."

4

The court determined that there was no "meeting of the minds" between Savage and the State. The court explained that "when Act 423 came, it threw everybody into a state of flux because there it is and you got to start using it, and nobody knew how to use it." After reviewing Act 423, the court concluded that

> for Act 423 to apply, if it's somebody that was on probation prior to [October 1, 2018] we then would have some discretion on whether they wanted to use the Act or not. However, the prosecuting attorney was given the ability to direct file under three circumstances: (1) if there are new charges, new allegations; (2) if the individual is special designation, a special purpose. And that is very broad because that it was the prosecutors to say in this particular individual has six other felonies which included violence. So that gave the prosecutors the ability to kind of tailor the special designation element in order to direct file. Third, if they became a fugitive. On each of these petitions, the one that was filed June 14, 2017, that was dismissed for compliance. That one that was filed November 28. 2017, and the other that was filed on April 24, 2018. All of those have the designation of "whereabouts unknown" because it was in there that he was not reporting. He was not at the residence he was supposed to be at, which makes the individual a fugitive, and provides the State to direct file. When they have the ability to direct file, that means he did not have the privilege, so to speak, of Act 43.

The court denied Savage's motion, determining that Act 423 did not apply under these circumstances and that Savage had not acted to his detriment.

The hearing proceeded, and Savage's probation officer, Logan Ferguson, testified that on October 30, 2017—about a month after the federal indictment involving Savage arrived in his office—he visited Savage's listed residence and found that he no longer lived there. Ferguson testified that when Savage did not show for his November 3 appointment, he filed the petition to revoke Savage's probation based on his failure to pay fees, incurring new federal criminal charges, and absconding and evading supervision. Later, Ferguson learned that Savage had been living in the same apartment complex, and due to construction at the complex, he was living in a different apartment. Ferguson explained that Savage had

5

turned himself in on the new federal charges, and since then, Savage had been in compliance with his probationary terms and was living at "Freedom House" in Russellville, which is a drug-and-alcohol rehabilitation facility. Ferguson testified that about a week after the petition to revoke had been nolle prossed, the prosecutor's office called and asked him to refile the petition.

Michael Evans, a drug-task-force officer for the Russellville Police Department who had been previously unavailable to testify, testified that on May 5, 2017, Savage had been arrested following the search of 1000 South Glenwood Road in Russellville, during which police found illegal drugs. Evans explained that Savage told him that he had procured large quantities of methamphetamine from other people also included in the indictment. Savage objected to Evans's testimony, asserting that he did not have personal knowledge of the search as a member of the "perimeter team" and that he did not have personal knowledge of Savage's statement in the patrol car. The State asserted that the rules were relaxed in probation hearings, and Evans's testimony was proper because he was a member of the search team, and "he [is] allowed to operate off of knowledge in conversation with other officers when they are working together." The court overruled the objection. Defense counsel objected again, stating that the prosecution was speculating as to the nature of the substances seized in the search because no lab reports had been admitted into evidence, and counsel also objected to the admission of the lab reports. The court sustained the objection and allowed the State to lay a foundation for the lab reports. The following colloquy occurred:

THE COURT:      Are those lab reports from the Department of Justice?

6

PROSECUTOR:     Yes, sir, they are.

THE COURT:      And what do they show?

DEFENSE:        Your Honor, I object to him telling what they show—he's not laid the foundation. He's not linked it to finding this—who this alleged contraband was linked to, tested material, chain of custody. We've got nothing linking that alleged substance to this piece of paper at this point.

PROSECUTOR:     Judge, I'll ask a couple of questions.

THE COURT:      Okay.

PROSECUTOR:     The drugs taken from the scene, were those sent to the crime lab?

WITNESS:        Yes, sir.

PROSECUTOR:     The Department of Justice crime lab?

WITNESS:        Yes, sir.

PROSECUTOR:     Okay. And it's your understanding those are—now you didn't take them yourself, right?

WITNESS:        No, I did not.

PROSECUTOR:     Okay. But those are the results of what was found that day at the investigation that you were a part of?

WITNESS:        Yes, sir.

PROSECUTOR:     Okay. What were those?

DEFENSE:        Your Honor, I object. He still don't have a case associating. He hasn't told us what case number he assigned to this. We can't match that with a case number on his report. We can't do chain of custody with this.

THE COURT:      Overruled.

The State asserted that the lab report showed that when tested, the substances were shown to be .17 grams of methamphetamine, and 4.07 grams of marijuana. Savage objected that the State had not established proper foundation, and the court accepted the lab reports into evidence over the objection.

The circuit court revoked Savage's probation due to Savage's failure to advise his probation officer of his change of residence, failure to report, possession and use of illegal drugs, and incurrence of new federal drug charges. The court sentenced him to fifteen years' imprisonment with four years' suspended imposition of sentence and assessed $1000 in fines and $150 in costs. Savage timely filed a notice of appeal.

## II. *Discussion*

### A. Agreement Not to Prosecute

On appeal, Savage contends that the circuit court erred by denying his motion to enforce the agreement not to prosecute. Specifically, he argues that an agreement with the State not to prosecute existed and that he suffered prejudice as a result of his reliance on the agreement. We agree with Savage's assertion that an agreement not to prosecute existed; however, we hold that he has not shown that he relied on the agreement to his detriment and suffered prejudice as a result of the State's refiling the petition to revoke.

We review the circuit court's findings of fact for clear error, giving due weight to inferences drawn by the circuit court, and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *State v. Johnson*, 2010 Ark. 77, at 6, 360 S.W.3d 104, 108. Questions of law, however, are reviewed de novo. *Id.*

An agreement not to prosecute must be enforced if the appellant shows that the agreement existed and that he or she relied on the agreement to the appellant's detriment. *Id.* at 16–19, 350 S.W.3d at 113–15. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001). Both parties must manifest assent to the particular terms of the contract. *Van Camp v. Van Camp,* 333 Ark. 320, 969 S.W.2d 184 (1998).

The court acknowledged the agreement between the parties at the initial hearing on April 2 when it stated that "the PTR is going to be non prossed and there is going to be an agreement to Act 423, sanctioned by the probation officer," and "as a part of this, Mr. Savage is waiving the request for a hearing on 423 to the circuit court?" Savage's attorney agreed that "as a condition of the non pros he is going to be sanctioned under 423 by probation, and he is waiving the hearing."

The parties agreed that Savage would be sanctioned according to Act 423, that he waived his right to appeal any sanctions, and that he waived a hearing on the matter. The fact that Savage might not have been eligible for Act 423 sanctions is not material to the formation of the agreement under these specific facts.

Savage asserts that he detrimentally relied on the agreement by giving up his right to a hearing and by waiving his right to appeal any Act 423 sanctions imposed; however,

9

Savage's ineligibility for the sanction program—a fact no one was aware of at the time the agreement was formed—renders the agreement impossible to perform;[2] thus, Savage has not proved that he relied on the agreement to his detriment.

Savage contends that he suffered prejudice when he gave up his right to request a hearing. He also contends that the outcome of the August 2 hearing resulted in revocation—a different result than if the parties had proceeded with the hearing on April 2 without the State's key witness. In support of his argument Savage offers the court's statement that Evans's testimony regarding the new federal charges weighed heavily in the decision. The court stated that

> [w]hen the testimony was being presented and I was listening to the probation officer, I was thinking, we are looking at some decently minor stuff that maybe I could structure, if they finished, and they didn't meet their burden, I wouldn't be able to use Act 423 because I don't have that authority, but I could structure a sentence along that guideline.
>
> However, when I listened to the testimony of Mr. Evans, you pled guilty on March 2, 2017, and three months later, you were sitting in a vehicle with him on May 5, 2017, admitting to possession of controlled substances and involved in a situation that was clearly multi-jurisdictional. And admitted to possession, knowledge of those issues. That is something I can't condone.

---

[2]The circuit court found that Savage could not be sanctioned under Act 423 because he had absconded during his probation; however, the State points out for the first time on appeal that in fact, Savage was ineligible for Act 423 sanctions because he had been arrested and charged with felony violation of federal drugs laws and refers this court to the Arkansas Community Correction Administrative Directive 17-43, which sets forth that an offender is excluded from being sanctioned pursuant to Act 423 if he or she is arrested for a felony. Our court will affirm if the circuit court reached the right result, even if for a different reason. *See Watkins v. State*, 2014 Ark. 283, at 5 n. 3, 437 S.W.3d 685. Here, the circuit court did reach the right result by finding that there was no enforceable agreement.

10

. . . .

So in consideration of the totality of the circumstances before me, . . . I am going to find the State has met its burden by the preponderance of the evidence that you have inexcusably violated conditions of your probation.

The court relied in part on Evans's testimony regarding the new federal criminal charges; however, the State correctly asserts that had the hearing taken place on April 2, Savage's probation officer, Logan Ferguson, also would have testified that Savage had incurred new federal criminal charges. Indeed, at the August 2 hearing, Ferguson testified that he had received a federal indictment naming Savage, who was then at large. Moreover, the court stated that it "could" have "maybe" structured a sentence had it not been for the new federal charges and if the State had not met its burden. The court did not say that but for Evans's testimony regarding the criminal charges, Savage's probation would not have been revoked. Ultimately, the court stated that it was "the totality of the circumstances" that led it to revoke Savage's probation. Because it is not clear that the court would have not revoked Savage's probation but for Evans's testimony, Savage has not shown that prejudice resulted.

## B. Chain of Custody

For his second point on appeal, Savage contends that his right to confront the witness was violated when the circuit court allowed two laboratory test reports into evidence via Officer Evans, who had not collected the substances during the search and could not verify the chain of custody linking the substances to the test results. His argument is not preserved.

Savage did not present the right-to-confrontation issue to the circuit court; thus, we are barred from addressing his argument. Our supreme court has stated that it will not

11

address an argument, even a constitutional one, that is raised for the first time on appeal. *Roston v. State*, 362 Ark. 408, 409, 208 S.W.3d 759, 760 (2005). At the revocation hearing, Savage objected solely on the basis of lack of foundation and failure to establish chain of custody, asserting that the case number had not been properly linked to the report from the laboratory and that Evans had no personal knowledge of the collection of the evidence or delivery to the lab. Savage made no mention to the court below of his constitutional right to confront the witness; thus, we are barred from addressing the issue here. To the extent that Savage argues that the chain of custody was not properly established, we affirm. The Arkansas Rules of Evidence are not strictly applicable in revocation proceedings, and we find no error in the circuit court's decision to admit the evidence. *See* Ark. R. Evid. 1101(b)(3).

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Hancock Law Firm*, by: *Alex R. Burgos*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.