Douglas Vincent METHENY, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 12, 1979.

Cert. Denied Oct. 22, 1979.

Ann Mostoller, Oak Ridge, for appellant.

William M. Leech, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, Mike Lawson, Asst. Dist. Atty. Gen., Clinton, for appellee.

## OPINION

CORNELIUS, Judge.

Appellant, Douglas Vincent Metheny, is before this court on three cases appealed from the Criminal Court of Anderson County. The cases are consolidated in this opinion, as they obviously should be.

Appellant was indicted as follows:

1. Armed Robbery, January 8, 1977, of Clyde and Myrtle Welch;

2. Burglary in the first degree, January 8, 1977, by breaking and entering residence of Clyde and Myrtle Welch;

3. Being an Habitual Criminal, having on January 8, 1977 committed the offense of armed robbery on the persons of Clyde and Myrtle Welch when he was then a person who had been seven times convicted within the purview of Tennessee Code Annotated § 40–2801.

On July 26, 1978, a jury found appellant guilty of burglary in the first degree and fixed his punishment at not less than five nor more than fifteen years in the state penitentiary and guilty of armed robbery with his punishment fixed at fifteen years in the state penitentiary. On the same date, at a bifurcated hearing, the same jury found appellant to be an habitual criminal as charged in the third indictment. It is from these three convictions the appellant is now before us assigning a total of six errors on the part of the trial court.

■ Appellant's first assignment of error is that the State violated the Interstate Agreement on Detainers, Section 40–3901, et seq. An examination of this record does not demonstrate that the State of Tennessee caused a detainer to be lodged with the federal authorities for the appellant.[1] The appellant's counsel filed and argued a motion to dismiss the indictments because appellant had been brought before the court three separate times through a writ of habeas corpus ad prosequendum and returned to federal custody without a trial or final determination of his cases. The trial judge heard the motion, took the matter under advisement and later entered an order denying the motion which included a thorough opinion.

The trial judge held that the compact agreement is not the exclusive means of transfer of prisoners between jurisdictions, and a writ of habeas corpus ad prosequendum does not come under the definition of "detainer" for the purposes of invoking the provisions of the agreement. *United States v. Scallion*, 548 F.2d 1173 (5th Cir.). The United States Supreme Court reversed an opinion of the Court of Appeals for the Second Circuit which held that a writ of habeas corpus ad prosequendum was a detainer entitling the State inmate to the protection provided in Article IV and specifically to a trial before his return to the state institution. *United States v. Mauro*,

436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The Supreme Court clearly held the writ of habeas corpus ad prosequendum not to be a detainer within the meaning of the agreement and thus does not trigger the application of the agreement. *Mauro*, supra. This assignment of error is overruled.

■ Appellant's second assignment of error is that the District Attorney failed to honor a plea agreement entered into by the parties, which plea agreement the court must honor. In the case of *James Douglas Orange v. State*, 1976, O'Brien, J., James Douglas Orange relied upon *Santobello v. United States*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 to enforce a plea agreement, as does this appellant. In *Santobello*, the statement was made that the courts will specifically enforce agreements made by the government in the process of plea bargaining *after the guilty plea is accepted by the court*. No authority was offered in *Orange*, supra, nor has any been offered herein, to support the appellant's position that a plea bargaining agreement will be enforced prior to its acceptance by the court. Where an agreement is accepted and breached, one of two results ordinarily follows, depending on the circumstances: (1) either specific performance of the agreement is directed, or, (2) the parties are restored to the status existing immediately before the plea was entered.

■ The bill of exceptions (line 24, page 28 through line 5, page 29) reflects that appellant's counsel attempted to take up with the trial judge the question of the plea bargain agreement but she did not succeed. We think the trial judge was in error not to allow appellant's counsel to complete the record on this point. However, appellant's counsel did not except to the trial judge's ruling. It has long been the rule of this court that errors to which no objections are made and exception taken in the court below cannot be raised on appeal. *Ezell v.*

1. Upon hearing appellant's motion, the trial judge found the District Attorney had not filed

a detainer within the meaning of Article IV(e) of the agreement.

*State*, 413 S.W.2d 678, 681 (Tenn.). Furthermore, appellant has not demonstrated the loss of any trial tactic or fundamental right as a result of this miscarriage of negotiations. In *Orange*, supra, this court adopted the comment of a Maryland court in *Wynn v. State*, 22 Md.App. 165, 322 A.2d 564:

> "We cannot overlook the fact that a prosecutor has a profound obligation to society. If prior to the consummation of a plea bargain he foresees that it might endanger society, he has not merely the right, but the responsibility, to withdraw from the agreement. Plea bargains should not be specifically enforced in the absence of affirmative evidence of prejudice arising from the bargain, which prejudice cannot be remedied by permitting the defendant to withdraw his plea and commence anew. Only upon a finding of such inexpiable prejudice should a defendant be permitted the option of specific performance by the trial court."

There being no affirmative showing of irremediable prejudice to appellant, we overrule this assignment of error.

■ Appellant's third assignment of error addresses the denial of a request for an instruction on criminal trespass as a lesser included offense of first degree burglary and the ordering of the sentences to run consecutively. This record does not support the need for an instruction upon the law of criminal trespass. *Howard v. State*, 578 S.W.2d 83 (Tenn.1979; recommended for publication).

■ The trial court ordered the sentences for first degree burglary and for armed robbery to run consecutively to the federal sentence appellant is serving and to run consecutively as to each other. The trial judge ruled this was necessary "in order to protect the public from further criminal conduct by the defendant, whom the court finds to be both a persistent offender and a multiple offender as judicially defined."

We do not find this ruling of the trial judge to conflict with the holdings in *Greer v. State*, 539 S.W.2d 855, 860 (Tenn.Cr.App.). This ruling also is supported by *Gray v. State*, 538 S.W.2d 391, 393 (Tenn.). The indictment under which appellant was convicted charged appellant with being an habitual criminal, which is a status, and did not charge an independent crime to the armed robbery offense. Upon being found guilty under the armed robbery indictment, the "trigger was pulled" for the habitual criminal indictment, the conviction thereunder enhancing the armed robbery sentence. *Harrison v. State*, 394 S.W.2d 713 (Tenn.); *Evans v. State*, 571 S.W.2d 283 (Tenn.). The charging procedure followed in this case is the same as in *State v. Hudson*, 562 S.W.2d 416 (Tenn.):

> "The defendant was separately indicted and convicted in one trial of the following offenses and received the punishment indicated."

Our Supreme Court approved the procedure of revising the judgments to comply with the law. The trial judge did this in his order entitled "Verdict of the Jury and Order of the Court."[2] This assignment of error is overruled.

■ Appellant's fourth assignment of error attacks the introduction of proof of certain crimes which were felonies but which would have been misdemeanors in Tennessee. Appellant says it was further error to instruct the jury that any crime which is a felony in another state must be considered as a felony for the purposes of conviction under the habitual criminal statute in Tennessee. The State's basis for proof of appellant's status as a habitual criminal is found upon the following convictions:

1. Taking goods of a value in excess of $100.00, Peach County, Ga. (Compare T.C.A. § 40–2712 and T.C.A. § 39–4203);

2. Assault with intent to rape, State of Iowa (Compare T.C.A. § 39–605);

2. See T.R. 61, page 54.

3. Receiving stolen property, State of Iowa (Compare T.C.A. § 40–2712 and *Odell Smith v. State*, C.C.A. at Jackson, February 1, 1979, Tatum, Judge).

We think the requisite criteria to support the status of having three prior convictions against him, as required under Section 40–2801 T.C.A., has been properly met. *Crafton v. State*, 545 S.W.2d 437, 439 (Tenn.).

Appellant's counsel in the caption to this assignment of error complained conjunctively as to the trial judge's instructions to the jury. We are cited no authority to support this part of the assignment and it is without merit. *Rockett v. State*, 475 S.W.2d 561 (Tenn.Cr.App.). This assignment of error is overruled.

■ Appellant's fifth assignment of error relates to the trial judge's allowing the introduction of certified copies of appellant's conviction and the certified statutes from out of state. It is alleged that the District Attorney failed to comply with defendant's motion for copies of such documents before trial.

The habitual criminal indictment in this case contains all the information required under Section 40–2803 T.C.A. The thrust of appellant's assignment centers upon the difference between having the information in fact and having certified information. Appellant states the complaint as follows:

"There was no reason for the State to fail to show defense counsel the documents they intended to rely upon, particularly when they had willingly produced *similar* documents earlier; in fact, failure to provide defense counsel with proper documents compounded the error in that it led defense counsel to believe that they knew what documents would be introduced at trial."

The bill of exceptions shows that the District Attorney answered the question by stating he had only shortly before trial received the certified copies. The trial judge

overruled appellant's objection and allowed this evidence. The record does not reveal a motion or an order for disclosure of evidence of the convictions alleged in the indictment.[3] No effort was made in the appellant's brief to explain how he was prejudiced by not seeing the certified documents. *Anglin v. State*, 553 S.W.2d 616, 622 (Tenn. Cr.App.). This assignment of error is overruled.

■ Appellant's sixth assignment of error is that the habitual criminal statute is unconstitutional on its face and as applied in this case. He raises three points. The first point is that no evidence may be presented to the jury concerning the nature of the crime committed by the defendant or of his character reputation, social-economic standing. This court held in *Delay v. State*, 563 S.W.2d 905, 907 (1977) (Cert. denied Feb. 20, 1978, pet. rehear. denied April 3, 1978):

"[7] Johnson (a co-defendant) complains that the court refused his offer of proof. During the habitual criminal trial, he sought to show by his wife his present good behavior. *This was not error. The only issue at this trial was the validity of* Johnson's prior convictions."

In the instant case the trial judge allowed the appellant to take the stand over the State's objection. During his testimony the State raised several specific objections which were sustained. However, the trial judge clearly advised appellant's counsel that he was not cutting off appellant's right to testify [on relevant matters]. We find no abuse of discretion on the part of the trial judge.

■ The next issue is that the jury had no leeway to enhance the sentence without automatically granting a life sentence without parole, and that this amounts to a form of cruel and unusual punishment. Our Supreme Court, in 1975, in an unanimous opinion, authored by [then] Justice Henry, clearly answered this issue against appellant.

---

**3.** Motion for discovery, filed August 5, 1977, clearly did not cover such a request. We are unable to find an order covering the three items covered in this motion (T.R. # 61, page 13).

*Pearson v. State*, 521 S.W.2d 225 (Tenn.) (citing with approval this court's opinion of *Hobby v. State*, 499 S.W.2d 956 (Tenn.Cr. App.). Appellant says in effect that the above cases have been compromised by *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). The lead opinion of *Woodson*, supra, covers six points all inter-locked to capital punishment, the death penalty, and who would live and who would die. It does not treat the subject of *automatic sentences*, but rather the subject of *automatic death penalties.*

"This whole country has traveled far from the period in which the death sentence was an automatic and commonplace result of conviction . . ." *Williams v. New York*, 337 U.S. 241, 247, 93 L.Ed. 1337, 69 S.Ct. 1079, 1083 (1949). *Woodson v. North Carolina*, supra.

This court has traversed this issue since *Woodson v. North Carolina*, supra, and again found the habitual criminal statute does not impose cruel and unusual punishment. *Glasscock v. State*, 570 S.W.2d 354, 355 (Tenn.Cr.App.), cert. denied Aug. 28, 1978.

Appellant next says it is error to require the jury that convicts of the triggering offense to determine the defendant's status of being an habitual criminal. We think appellant has misconstrued *Bishop v. State*, 563 S.W.2d 913 (Tenn.Cr.App.).

"Even though this assignment of error is not properly before this court, we note that the jurors had already been qualified before hearing the burglary evidence and find no merit to the appellant's contention that they should be qualified again before hearing the habitual criminal evidence. The same jury is required to hear both facets of the bifurcated proceedings, and was found initially to be qualified. This assignment is overruled."

Appellant contends that the habitual criminal statute is unconstitutional, because as applied in the instant case the life sentence was so excessive and disproportionate to the underlying offenses that it constituted a violation of the Eighth Amendment protection against cruel and unusual punishment. Appellant relies upon the rationale of *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973) and *Rummel v. Estelle*, 568 F.2d 1193 (5th Cir. 1978).

In *Elnorris Smith v. State of Tennessee*, at Jackson, opinion filed Oct. 18, 1978, Duncan, J., another panel of .this court found:·

"The underlying offenses of *Hart* and *Rummel* can hardly be equated with the defendant's underlying offenses in the present case. The same thing must be said in comparing the *Hart* and *Rummel* triggering offenses with the defendant's triggering offense."

We adopt the comparison test of *Smith*, supra. The present case has underlying offenses of assault with intent to rape and taking goods of a value in excess of $100.00, as well as a triggering offense of armed robbery and the life sentence given was not excessive and disproportionate to the underlying offenses. This assignment of error is overruled.

We affirm the judgments below.

DWYER and BYERS, JJ., concur.