# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 14, 2015 Session

## STATE OF TENNESSEE v. JARED BOOTH SPANG

### Appeal from the Criminal Court for Davidson County
### No. 2010-D-2926     Steve R. Dozier, Judge

---

### No. M2014-00468-CCA-R3-CD - Filed February 6, 2015

---

Jared Booth Spang ("the Defendant") was indicted for voluntary manslaughter and aggravated assault. The Defendant pleaded guilty to the lesser-included offense of reckless homicide. Pursuant to a written plea agreement signed by the Defendant and the State, the State agreed it would take no position at the sentencing hearing as to whether the sentence would be deferred pursuant to Tennessee Code Annotated section 40-35-313. At the sentencing hearing, the State argued against deferral, stating that "a permanent conviction is necessary [so as] not to depreciate the seriousness of this crime." The trial court sentenced the Defendant to three years probation and denied deferral, concluding "there is something permanent about death" and "there should be something permanent about . . . this conviction." We conclude that the State breached the plea agreement. We, therefore, reverse and remand for a new sentencing hearing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

John G. Oliva, Nashville, Tennessee, for the appellant, Jared Booth Spang.

Herbert H. Slatery, III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

The sparse facts of this case are derived from the factual basis for the plea provided by the State, the Investigation Report prepared by the Department of Correction's Probation and Parole Office for the sentencing hearing, and testimony from Justin Meers's ("the Victim") mother.

The Defendant is a decorated veteran having served as an infantryman with the 101st Airborne Division in Afghanistan. He is married and has one daughter. At the time of the sentencing hearing, the Defendant was 34 years of age and was attending Porter and Chester Institute to become a licensed electrician. At the age of 24, the Defendant became dependent on Percocet. He completed a substance abuse program for opioid addiction in 2006. He was disciplined by the Army for wrongful use of opiates, and his rank was reduced from E-4 to E-1. He received a General Discharge under Honorable Conditions. He was awarded a 50% disability based on Post-Traumatic Stress Syndrome and a 10% disability based on degenerative joint disease.

On January 16, 2010, the Defendant and two other soldiers ("the Defendant's group") encountered a group of eight individuals including five soldiers, the Victim, who was not in the military, and two females ("the Victim's group") in downtown Nashville. One of the soldiers in the Victim's group was intoxicated and became involved in a verbal altercation with one of the soldiers in the Defendant's group. The altercation led to a fist fight between two soldiers from each group. Initially, the Defendant was not involved in the fight. However, the fight eventually grew to four soldiers from the Victim's group and all three soldiers in the Defendant's group. The Victim was not involved and was standing near one of the females from his group. During the fight, the Defendant struck the Victim one time. The Victim fell backwards, striking his head on the concrete. Both groups left the scene, and a witness called 911. The Victim was transported to the hospital and remained on life support until January 21, 2010, at which time he was pronounced dead.

The Defendant was indicted for voluntary manslaughter and aggravated assault.

### The Plea Agreement and Plea

A Petition to Enter Plea of Guilty ("the plea agreement") was entered into by the State and the Defendant on October 28, 2013. The plea agreement was signed by the Defendant, the Defendant's attorney, and the Assistant District Attorney General. The plea agreement

specified that: (1) the Defendant was a Standard Offender; (2) the sentence was to be probated; (3) the State would take no position on whether the sentence would be deferred pursuant to Tennessee Code Annotated section 40-35-313; and (4) the trial court would conduct a sentencing hearing to determine the length of the sentence and whether further proceedings would be deferred. On the same date, the Defendant pleaded guilty, and the trial court set the sentencing hearing.

*The Sentencing Hearing*

The trial court conducted a sentencing hearing on February 7, 2014. The Victim's mother testified that the Victim was 21 years old at the time of his death. He had been promoted to warehouse manager of a tile company and had moved from Cincinnati just ten days before the incident to open and manage a Franklin, Tennessee location. On the night he was struck by the Defendant, the Victim was out with a high school friend, who was a soldier stationed at Fort Campbell. The Victim's mother and father had been in the military, and the Victim's mother stated, "Our son was killed by one of our own." The Victim's mother requested "that at a minimum [the Defendant's] conviction not be allowed to be expunged from his record" and stated "[i]f you do, to me it means my son's death was inconsequential."

Following the testimony from the Victim's mother, the State entered into evidence the Investigation Report. The Defendant's short allocution, in which he said he was "truly sorry for what happened," was also read and transcribed.

After arguing deterrence as a factor to be considered for deferral, the same Assistant District Attorney General who signed the plea agreement, stated:

> In addition to that, we would submit to the court that a permanent conviction is necessary not to depreciate the seriousness of this crime.
> . . .
> This isn't something that just happened. This something [the Defendant] did. And for that reason, Your Honor, we would ask the Court respectfully to consider the factors and would submit after considering all of the factors, we would ask the Court to make this a permanent conviction not under 40-35-313.

Thereafter, the trial court made certain findings regarding the appropriate sentence. The court found that the Defendant did not have any criminal convictions, that he had a history of illegal use of opiates, that he was disciplined by the Army for abuse of drugs, and that he was drinking on the night he struck the Victim. Based on these findings, the trial court imposed a sentence of three years to be served on probation.

Turning to deferral under Tennessee Code Annotated section 40-35-313, the trial court, after mentioning the Defendant's service to his country and the absence of criminal convictions, stated:

> I can't get over - - and again, this is part of the reckless homicide but it's still just the unprovoked acts that lead to this young man losing his life.
> . . .
> But without being too flippant, obviously there is something permanent about death. So when you weigh that under the circumstances of the situation that occurred, the deterrent value that it has, I think there should be something permanent about the circumstances that leads to this conviction of [the Defendant].

Based upon this consideration, the trial court denied the Defendant's request for deferral.

## Analysis

### *Breach of Plea Agreement*

The Defendant argues that the State committed plain error by breaching the terms of the plea agreement. We agree that the State breached the plea agreement and, because the record does not reflect that the Defendant made a contemporaneous objection to the State's argument against diversion, the standard for review is one of plain error under Tennessee Rule of Appellate Procedure 36. To grant relief for plain error, this Court must determine that an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

Plea agreements are an important part of the judicial process and an important tool in the effective disposition of criminal dockets. Santobello v. New York, 404 U.S. 257, 264 (1971).[1] In explaining the plea bargaining process, the Supreme Court has stated:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree

---

[1] We note that the State is not obligated to make a plea offer or enter into a plea agreement, the trial court does not have to accept a plea agreement, and the plea offer is revocable by the State at any time before it is accepted by the trial court. State v. Turner, 713 S.W.2d 327, 329 (Tenn. Crim. App. 1986).

on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

Id. at 262.

Citing Santobello, this Court in Metheny v. State, 589 S.W.2d 943, 945 (Tenn. Crim. App. 1979) stated, "Where an agreement is accepted and breached, one of two results ordinarily follows, depending on the circumstances:  (1) either specific performance of the agreement is directed, or, (2) the parties are restored to the status existing immediately before the plea was entered."

This Court has also  recognized the breach of a plea agreement by the State as grounds for post-conviction relief.  Ronald L. Cox v. State, No. 02C01-9508-CR-00221, 1997 WL 284713, at *1 (Tenn. Crim. App. May 30, 1997) (citing  Brown v. State, 928 S.W.2d 453 (Tenn. Crim. App. 1996); Howard Templeton v. State, No. 01C01-9406-CC-00220, 1995 WL 2995, at *1 (Tenn. Crim. App. Jan.5, 1995)).

In this case, we determine that the breach of the plea agreement by the State was plain error.  The error involved a substantial right–initially, the Defendant's right to a trial by jury and, at the sentencing hearing, the right to seek deferral with the State taking no position.  Because the trial court adopted the permanence of death argument made by the State, we conclude that the error more probably than not affected the judgment or resulted in prejudice to the judicial process.  See Tenn. Rule App. P. 36(b).

*Permanence of Death as a Factor in Denying Diversion*

Challenges to the trial court's denial of deferral are reviewed under an abuse of discretion standard.  State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998).

According to the plea agreement, the Defendant was a qualified defendant for purposes of deferral.  When a defendant is so qualified, the trial court, in determining whether or not to grant deferral, must consider the following seven factors:

(a) the accused's amenability to correction,
(b) the circumstances of the offense,
(c) the accused's criminal record,
(d) the accused's social history,
(e) the accused's physical and mental health,
(f) the deterrence value to the accused as well as others, and

5

(g) whether judicial diversion will serve the interests of the public as well as the accused.

Id. at 229.

Ten days before the sentencing hearing in this case, this Court issued its opinion in State v. Teresa Turner, No. M2013-00827-CCA-R3-CD, 2014 WL 310388 (Tenn. Crim. App. Jan. 29, 2014), which, just as in this case, involved an appeal from the denial of deferral in a reckless homicide case. This Court stated:

> It appears from the record before us that the trial court denied judicial diversion solely because a death was involved. A victim's death is involved in every case of reckless homicide, but our legislature has not excluded reckless homicide from offenses for which judicial diversion is a sentencing option. *See* T.C.A. § 40-35-313. Furthermore, the trial court did not review all of the relevant factors and explain "both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Electroplating, Inc.*, 990 S.W.2d at 229. In our view, the trial court's denial of judicial diversion based solely upon the death of the victim is an abuse of discretion. Therefore, we reverse the trial court's judgment and remand the case to the trial court for reconsideration.

Teresa Turner, 2014 WL 310388, at *6.

In this case, in referencing that "there is something permanent about death," the trial court stated, "So when you weigh that under the circumstances of the situation that occurred, the deterrent value that it has, I think there should be something permanent about the circumstances that leads to this conviction of [the Defendant]." The court made this finding shortly after the State breached the plea agreement by arguing against diversion on the grounds that death is permanent.

Death is always permanent in a homicide case and cannot be considered as a factor for denying diversion under Tennessee Code Annotated section 40-35-313. However, the circumstance leading to death can be considered. Although the trial court erred in considering the permanence of death in a reckless homicide case as a factor for denying deferral, the trial court correctly considered other factors, such as the "circumstances of the situation" and "the deterrent value" of a permanent conviction. The trial court pointed out that the Defendant was out drinking, became involved in a brawl, and struck the Victim "unprovoked." The permanence of death was not the sole factor upon which the trial court denied diversion, therefore the trial court did not abuse its discretion in denying diversion.

6

## Conclusion

We conclude that specific performance of the plea agreement, the first "result" under Metheny when a plea agreement is accepted and breached, is appropriate under the circumstances of this case. Metheny, 589 S.W.2d at 945. For the aforementioned reasons, we reverse the judgment of the criminal court and remand for a new sentencing hearing to be held before a different judge,[2] in which the State takes no position as to deferral.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

---

[2] In no way by requiring a new sentencing hearing before a different judge, do we intend to suggest that the trial court would not conduct a fair and impartial sentencing hearing. However, because the State argued against diversion previously before the trial court, we conclude that the sentencing hearing should be before a judge who has not heard the State's argument.