IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 27, 2015 Session

## MATTHEW B. FOLEY v. STATE OF TENNESSEE

Appeal from the Circuit Court for Rutherford County
No. F-52128    David M. Bragg, Judge

_____

No. M2015-00311-CCA-R3-PC – Filed January 20, 2016

_____

The Petitioner, Matthew B. Foley, appeals as of right from the Rutherford County Circuit Court's summary dismissal of his petition for post-conviction relief as untimely. He asserts that the statute of limitations should be tolled because he did not learn until well after its expiration that the State sought to enforce the provisions of the sexual offender registration act against him contrary to the terms of his plea agreement. Following our review, we reverse the judgment of the post-conviction court and remand the case for an evidentiary hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Wesley B. Fort, Smyrna, Tennessee, for the appellant, Matthew B. Foley.

Herbert H. Slatery III, Attorney General and Reporter, and Sophia S. Lee, Senior Counsel, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

After being charged with conspiracy to commit rape and aggravated kidnapping, the sixteen-year-old Petitioner entered a guilty plea to facilitation of especially aggravated kidnapping, a Class B felony, on February 28, 2002. See Tenn. Code Ann. §§ 39-11-403, -13-305. At the guilty plea submission hearing, the prosecutor summarized the factual basis for the Petitioner's plea:

> And it's based on conduct occurring on October the 27th of 2001. And generally what the proof would show is that [the Petitioner] and an adult, who is currently under indictment in this court for aggravated rape and aggravated kidnapping—that they were riding around. That they observed a 13 year-old girl that they did not know at the movie theater at Stones River. That they essentially grabbed this girl, drove her around Murfreesboro. They ended up at . . . Nice's Mill Dam where the adult took her out of the car and into the woods, and ultimately raped her. During the course of the rape, she suffered . . . some type of vaginal tear, which elevated it from rape to aggravated rape.
>
> There is also in her [preliminary hearing] testimony the mention of a knife. . . .
>
> . . . [S]he answered, after the older guy got in the car, he told me to crawl in the front seat. This is before the rape. I saw him pull a knife out a little. . . .

According to the prosecutor, the victim further testified that she then saw the older man, John Rowe, place the knife underneath his shirt.

The prosecutor explained the relevance of the knife, "I don't believe that he necessarily pulled that knife on her during the rape. But it plays into this case. She was aware that he had it. And it's going to play, ultimately, into the plea that [the Petitioner] is about to enter." The prosecutor continued,

> . . . [I]n light of the fact that he is 16 years old and has no significant prior record, balanced against the obvious seriousness of this crime, . . . he is pleading guilty to an information charging him with facilitation of the Class A Felony of especially aggravated kidnapping, . . . meaning that there was both false imprisonment and the display or use of a weapon . . . fashioned—or some article fashioned to be like a weapon.

The prosecutor recommended a sentence of eight years, as Range I, standard offender, to be suspended, with credit for time served, and completed on probation. The prosecutor also made the following comments regarding the specifics of the negotiated agreement:

> Now, although this is not—the plea itself is not to a sexual crime, and therefore the usual things are not mandatory, he is agreeing that we're going to apply sexual offender treatment under 39-13-705 to his probation. And he'll undergo that as a normal thing. The surcharge and the registry, however, will not apply to him. And that's of major benefit to him . . . that he won't be on the registry. He's to do 100 hours of public service work at a rate of at least 8 hours per month. There is no fine. He is to pay the court costs. And, obviously, he understands . . . that upon doing this plea, he becomes a potential witness to either side should we go to trial on Mr. Rowe.

The trial court then reviewed with the Petitioner the various trial rights he was waiving by pleading guilty. The trial court also outlined the particular terms of the plea agreement and the consequences of his guilty plea. Indeed, in response to the trial court's questioning, the Petitioner acknowledged that he was "going to be required to follow the requirements for a sex offender, although [he was] not going to be officially a sex offender." Additionally, the Petitioner confirmed for the trial court that he was pleading guilty voluntarily. After the Petitioner provided testimony about the events surrounding the offense, the trial court accepted his plea.

From the technical record, it appears that the Petitioner's probation was twice violated. On August 10, 2004, a violation of probation order was entered partially revoking him and ordering him to serve sixty days before being returned to probation. Again, on July 17, 2008, a violation of probation order was entered; this time the Petitioner was revoked and ordered to serve the remainder of his eight-year sentence incarcerated.

On January 7, 2015, the Petitioner filed a petition for post-conviction relief, seeking relief from his facilitation of especially aggravated kidnapping conviction. In the petition, the Petitioner made the following factual allegations[1]:

---

[1] For the purpose of clarity, we place these allegations in numerical sequence, but these numbers do not correspond to the sequence in the petition.

1.  On June 30th 2002, the Sex Offender Registration Act was modified to include Facilitation of Especially Aggravated Kidnapping under the definition of "sexual offense." As a result, [the] Petitioner would have been required to register as a sex offender. However, [the] Petitioner remained unaware of this change and, more importantly, no agent of the State of Tennessee ever contacted or informed the Petitioner of his obligation to register between 2002 and 2004.

2.  In 2004, the Tennessee State Legislature again revised the Sex Offender Registration Act. Under the 2004 law, effective July 1, 2004, the offense for which [the] Petitioner pled guilty, Facilitation of Especially Aggravated Kidnapping, was not included as a "sexual offense" or "violent sexual offense," and [the] Petitioner was again not required to register as a sex offender.

3.  From 2004 until July 1, 2012, [the] Petitioner was incarcerated on a Violation of Probation.

4.  In the fall of 2011, [the] Petitioner was erroneously informed that he was currently obligated to register as a sex offender within 48 hours of his release from incarceration. Through his mother Karen Gray, [the] Petitioner hired the services of an attorney, Ronald G. Freemon, to dispute this action. [The] Petitioner was charged with "Sexual Offender Registration Form Violation" in Wayne County for his refusal to comply with the Sex Offender Registration Act. [The] Petitioner's attorney demonstrated to the prosecution that [the] Petitioner was not required to register as a sex offender because the offense of Facilitation of Especially Aggravated Kidnapping was not a sex offense under the Act. The Wayne County District Attorney dismissed the charge in case no. 91GS1-2012-CR-25247 on April 3, 2012.

5.  On July 1, 2012, another modification of the Sex Offender Registry law came into effect. As of July 1, 2012, and through the present date, [the] Petitioner is required to register under the Sex Offender Registration Act.

6. . . . He has entered nolo contendre pleas in case number F71825 and F72122 to violations of the Sex Offender Registration Act in the Circuit Court for Rutherford County on October 13, 2014, for which he is currently serving a 90-day term of incarceration, followed by 9 months on probation. [The] Petitioner is due to be released from custody on or about January 20, 2015 . . . .

In the Petitioner's memorandum of law attached to the petition, he clarified that he was indicted in Rutherford County on June 3, 2014, and again on August 6, 2014 for violating the Sex Offender Registration Act, cases F71825 and F72122. He was not specific as to the precise nature of the violations charged prior to the entry of his guilty pleas on October 13, 2014. He stated that he was not seeking relief from the judgments in those cases, "but to demonstrate the harm wrought by the State's default on its agreement in the instant case."

The Petitioner stated as his post-conviction "claim for relief"—"By modifying the Sex Offender Registration Act to include the offense of Facilitation of Especially Aggravated Kidnapping and forcing [the] Petitioner to comply with the sex offender registry, the State of Tennessee has effectively violated a material condition of the plea agreement entered on February 28, 2002." The Petitioner acknowledged that the one-year statute of limitations for post-conviction relief had long since expired but argued that "strict adherence thereto would effectively deny [him] a reasonable opportunity to present his claims." He contended that due process necessitated tolling of the limitations period because the State's default "arose over 10 years after the limitations period" had expired, that "it was impossible to assert his claim in any earlier proceeding[,]" and that he had "diligently pursued his rights throughout this time, as evidenced by the successful defense against the Sex Offender Registration Violation charge from 2011 in Wayne County[.]" As a remedy, the Petitioner requested specific performance of the plea agreement "by prohibiting the State of Tennessee from requiring [him] to register as a sex offender on the basis of the judgment in this case regardless of any past, present or future changes in the law" or, in the alternative, for the court to vacate the judgment and allow the Petitioner to withdraw his guilty plea.

The post-conviction court summarily dismissed the petition by written order filed on January 26, 2015, concluding that the petition was time-barred:

> . . . As stated in [John Doe v. [Robert E.] Cooper[, Jr., Tenn. Attorney General], No. M2009-00915-COA-R3-CV, 2010 WL 2730583, at *7 (Tenn. Ct. App. July 9, 2010):
>
>> The United States Supreme Court and the United States Court of Appeals for the Sixth Circuit upheld Tennessee's sex offender registry in Smith v. Doe, 538 U.S. 84 (2003), Conn. Dept. of Public Safety v. Doe, 538 U.S. 1 (2003), Doe v. Bredesen, No. 3:04-CV-566, 2006 WL 849849 (E.D. Tenn. Mar. 28, 2006), aff'd 507 F.3d 998 (6th Cir. 2007), cert. denied, -- U.S. --, 129 S.Ct. 287 (2008), and Cutshall v. Sundquist, 193 F.3d 466 (6th Cir. 1999).

"An examination of the clearly-expressed legislative intent of the registration act supports the conclusion that the registration requirements imposed by the sex offender registration act are nonpunitive and that they are therefore a collateral consequence of a guilty plea." Ward v. State, 315 S.W.3d 461, 469 (Tenn. 2010) [(quoting Tenn. Code Ann. § 40-39-201)]. "The Court of Criminal Appeals of Tennessee noted in Gibson that '[t]he United States Supreme Court has declared that sexual offender registration acts with retroactive application do not violate the federal Constitution's Ex Post Facto Clause if they are nonpunitive in nature.'" Doe v. Cooper, 2010 WL 2730583, at *7 ([quoting] State v. [Larry Wade] Gibson, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000, at *5 (Tenn. Crim. App. Dec. 9, 2004).

As a result, the Petitioner's due process rights have not been violated because the retroactive placing of the Petitioner on the sexual offender registry does not violate [the Tennessee or United States Constitution], and the statute of limitations for post-conviction relief has not been tolled.

The Petitioner filed a timely notice of appeal therefrom, challenging the post-conviction court's summary dismissal.

ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred in summarily dismissing his petition for post-conviction relief because due process requires tolling of the statute of limitations. Specifically, he contends that the State violated "a material term" of his plea agreement by enforcement of the sexual offender registry act against him and that strict application of the one-year limitations would deny him the opportunity to present his claim in a meaningful time and manner. He requests that we remand the case for an evidentiary hearing at a minimum or, alternatively, allow him the option of specific performance of the plea agreement or to rescind his guilty plea. The State responds that the petition was properly dismissed as untimely because the Petitioner has not established that he was diligent in pursuing his rights under the Post-Conviction Procedure Act.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Our courts have used the post-conviction procedure to redress a denial of the right to counsel, in proper cases, by ordering "[s]pecific performance of a plea agreement [as] a constitutionally permissible remedy." Goosby v. State, 917 S.W.2d 700, 708 (Tenn. Crim. App. 1995) (citing Santobello v. New York, 404 U.S. 257 (1971); Turner v. State,

858 F.2d 1201, 1208 (6th Cir. 1988)); <u>see also</u> <u>John Doe v. Mark Gwyn, Dir. of Tenn. Bureau of Investigation, et. al.</u>, No. E2012-00497-CCA-R3-HC, 2013 WL 1136523, at *5-6 (Tenn. Crim. App. Mar. 19, 2013).

> A plea bargain agreement may be scrutinized on appeal where enforcement of the agreement would deny the accused a fundamental constitutional right or be unconscionable and not deserving of judicial approval. When the State later breaches a plea bargain agreement, the aggrieved defendant may either seek specific performance of the agreement or ask the court to restore both parties to the status they occupied immediately before the plea was entered. However, these principles apply only after the bargained guilty plea has been accepted by the Court.

<u>Harris v. State</u>, 875 S.W.2d 662, 666 (Tenn. 1994) (citations omitted). <u>See also</u> <u>State v. Turner</u>, 713 S.W.2d 327, 329 (Tenn. Crim. App. 1986) ("When the state later breaches a plea bargain agreement, the aggrieved defendant may either seek specific performance of the agreement or ask the court to restore both parties to the status they occupied immediately before the plea was entered."); <u>Metheny v. State</u>, 589 S.W.2d 943, 945 (Tenn. Crim. App. 1979) ("Where an agreement is accepted and breached, one of two results ordinarily follows, depending on the circumstances: (1) either specific performance of the agreement is directed, or, (2) the parties are restored to the status existing immediately before the plea was entered.").

However, a petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final[.]" Tenn. Code Ann. § 40-30-102(a). Here, it is undisputed that the Petitioner filed his petition well outside the one-year statute of limitations.

"[T]he right to file a petition for post-conviction relief . . . shall be extinguished upon the expiration of the limitations period." Tenn. Code Ann. § 40-30-102(a). "If it plainly appears from the face of the petition, any annexed exhibits or the prior proceedings in the case that the petition was not filed . . . within the time set forth in the statute of limitations, . . . the judge shall enter an order dismissing the petition." Tenn. Code Ann. § 40-30-106(b). The Post-Conviction Procedure Act is explicit that the one-year statute of limitations "shall not be tolled for any reasons, including any tolling or saving provision otherwise available at law or equity." Tenn. Code Ann. § 40-30-102(a).

The limitations period has three statutory exceptions for certain claims involving new constitutional rights, certain claims involving new scientific evidence, and for sentences enhanced by subsequently overturned convictions. Tenn. Code Ann. § 40-30-

102(b).  There is nothing in the record to suggest that any of these exceptions apply to the Petitioner's case.

In addition to the statutory circumstances, our supreme court has held that due process principles may require tolling the statute of limitations.  See Whitehead v. State, 402 S.W.3d 615, 622-23 (Tenn. 2013).  To date, our supreme court "has identified three circumstances in which due process requires tolling the post-conviction statute of limitations": (1) when the claim for relief arises after the statute of limitations has expired; (2) when the petitioner's mental incompetence prevents him from complying with the statute of limitations; and (3) when the petitioner's attorney has committed misconduct.  Id. at 623-24.  To succeed upon such a claim, a petitioner must show "(1) that he or she had been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing."  Id. at 631 (citing Holland v. Florida, 560 U.S. 631, 648-49 (2010)).

The standard for pursuing one's rights diligently "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts [to pursue his or her claim]."  Whitehead, 402 S.W.3d at 631 (quoting Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002)) (internal quotation marks omitted) (brackets in original).  However, equitable tolling of the statute is a remedy that should be utilized sparingly in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period and gross injustice would result."  Id. at 631-32 (citations omitted).  As a result, "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  Id. at 632 (citations omitted).

The Petitioner's claim for due process tolling is one in which the grounds for overturning the conviction arose after the one-year deadline had already passed, i.e., it can be characterized as a later-arising claim.  See Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995).  Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner."  Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992).  Our supreme court has held that the "Whitehead-Holland test" "applies to all due process tolling claims, not just those that concern alleged attorney misconduct[,]" and has utilized that standard in analyzing a claim for relief that arose after the statute of limitations had expired.  Bush v. State, 428 S.W.3d 1, 21-23 (Tenn. 2014).

Here, the post-conviction court decided that the Petitioner's retroactive placement on the sexual offender registry did not violate his due process rights, relying on Ward v. State, wherein our supreme court determined that mandatory registration as a sexual offender was "a collateral consequence of the guilty plea."  315 S.W.3d 461, 463-64

(Tenn. 2010). Because the registration requirement is "remedial and regulatory" rather than punitive, the court held that "the trial court was not required to advise the [guilty-pleading] defendant of the requirement of sex offender registration." Id. In addition, the court said, "the registration act, although perhaps inconvenient for Mr. Ward, has no effect on his range of punishment. We are joined in this view by a majority of the states in this country." Id. at 469.

However, our supreme court cautioned in its ruling that the terms of the registration law applicable to Ward should not be read as approval of other, inapplicable restrictions expressed in the law, such as those that apply when the victim is a minor. See Ward, 315 S.W.3d at 472-73. The court made "two final observations" in concluding analysis of the issue:

> First, at the risk of stating the obvious, we address the applicable sections of the registration act as currently written and in effect. . . . [T]he General Assembly has frequently enacted amendments to the registration act— amending the statute at least fifteen times since 2005. Although some of the amendments have loosened the requirements imposed on sex offender registrants, most of the changes have had the effect of adding or increasing requirements and restrictions. Obviously, nothing in this opinion precludes the possibility that an amendment to the registration act imposing further restrictions may be subject to review on the grounds that the additional requirements render the effect of the act punitive. Secondly, we reiterate that the restrictions imposed by Tennessee Code Annotated section 40-39-211(a) & (c), applicable only to offenders whose victim was a minor, are not at issue here because Mr. Ward's victim was not a minor.

Thus, Ward did recognize that the restrictions placed upon a sexual offender whose victim was a minor have more impact than the standard restrictions on sexual offenders.

Moreover, while our supreme court did hold that registration as a sex offender was a collateral consequence of a conviction for a sexual offense, the court in Ward additionally determined that a mandatory sentence of lifetime community supervision was a direct and punitive consequence of Ward's guilty plea. See 315 S.W.3d at 473-76; see also Bush, 428 S.W.3d at 9. The court explained why lifetime supervision is a more grievous sanction than collateral consequences such as sex offender registration and a defendant's parole requirements. Id. The court also explained that lifetime community supervision is "punitive in effect," because it requires the defendant

> to regularly report to a parole officer who is granted wide discretion in imposing supervisory requirements, and to pay a monthly fee. The imposition of lifetime supervision and the attendant consequences placed

-9-

on an individual after having served his or her entire sentence of incarceration and/or regular parole are significant.

Ward, 315 S.W.3d at 474. Because "lifetime supervision imposes an additional set of restrictions and requirements on the offender after serving his or her entire sentence of incarceration," the court found that "post-release supervision is a significant, punitive component of [a] defendant's sentence." Id. at 475-76 (quoting People v. Goss, 733 N.Y.S.2d 310, 314 (N.Y. App. Div. 2001)).

In the present case, the Petitioner's victim was a minor, and therefore, the restrictions imposed by Tennessee Code Annotated sections 40-39-211(a) & (c) and 40-39-215 would be applicable to him once registered. The Petitioner would also be subject to the lifetime community supervision requirement of Tennessee Code Annotated section 39-13-524. Accordingly, we cannot agree with the post-conviction court's conclusion that due process did not require tolling based upon the rationale espoused in Ward regarding the discussion of collateral and direct consequences of a guilty plea. We must conclude that the Petitioner, here, after registering, would be subject to significant, punitive consequences from his 2002 guilty plea to facilitation of especially aggravated kidnapping.

We make another important distinction. Ward was an appeal in a post-conviction proceeding, wherein Ward alleged that his plea was not "knowing and voluntary" because he was not aware of the plea's full consequences, specifically his placement on the sex offender registry and mandatory sentence of lifetime supervision. "[T]he utility in [Ward] of discerning between collateral and direct consequences of a guilty plea was in adjudicating whether the accused, uninformed as to the consequence at issue, submitted a knowing and voluntary plea." Doe v. Gwyn, 2013 WL 1136523, at * 2. Rather than any failure to advise a defendant of certain consequences to a guilty plea for a sexual offense, the Petitioner in this case was in fact specifically advised that he was not required to register as a sexual offender at the guilty plea submission hearing. Thus, Ward is clearly distinguishable on its facts.[2] Accordingly, we return to analysis of the guidelines for due process tolling provided for by Whitehead and Holland: whether the Petitioner established (1) that he had been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.

First, we must determine when the Petitioner's later-arising claim arose before we can assess whether he pursued his rights diligently. See Sands, 903 S.W.2d at 301. For example, in Doe v. Gwyn, the petitioner pled guilty to attempted aggravated sexual battery and was required to register as a sexual offender at the time of his 1995

_____

[2] We feel constrained to note that Bush v. State, a 2014 case from our supreme court, dealt with "very similar" facts as those presented in Ward and, thus, is also distinguishable. 428 S.W.3d at 8.

-10-

conviction; however, the 2004 and 2007 amendments to the sexual offender registration act reclassified him "as a violent sexual offender for life" and "removed his opportunity to be removed from the registry after ten years following the expiration of his sentence and caused his name and photograph to be published." 2013 WL 1136523, at *1. He argued, in a 2011 habeas corpus petition, that the "changes wrought by the legislature worked a breach of his plea contract" and that "the courts should specifically enforce his plea agreement." Id. On appeal, this court first determined that the petitioner was not entitled to habeas corpus relief because "the applicable restraints upon the petitioner by the sexual offender registration laws [did] not equate to an extension of his sentence" and then addressed the petitioner's claim that, but for the grant habeas corpus relief, "no legal avenue was ever available to address [his] complaints." Id. at *5. This court addressed the feasibility of redress via a petition for post-conviction relief and concluded that such a claim was viable in a post-conviction context. Applying the Whitehead-Holland standard, which requires a determination that some extraordinary circumstance stood in the Petitioner's way and prevented timely filing, we rely on the same logic used in Doe v. Gwyn, that the petitioner had a later-arising post-conviction remedy available to him in that case.

Turning to an examination of the Petitioner's diligent pursuit of his rights, we note that the court went on to conclude in Doe v. Gwyn that the petitioner was not entitled to due process tolling because "several years [had] elapsed since the statutory amendments that aggrieve[d] the petitioner were enacted." Id. at *6. In so concluding, the court reasoned that "[a]pparently, the petitioner's concerns about the sexual offender registration arose via 2004 and 2007 amendments to the law despite that he may not have experienced consequential employment or social detriments until later[,]" and his petition was not filed until 2011. Id. at *5. However, the rationale of Doe v. Gwyn, that the date of the amendments worked to aggrieve the petitioner, will not prevail in every case.

Here, we disagree with the State's assessment that the Petitioner's post-conviction claim arose "as early as fall 2011 when he was charged with violating the sex offender registration statute in Wayne County or as recently as July 1, 2012, when the statute was amended to require persons convicted of facilitation to commit especially aggravated kidnapping to register as a sex offender." The Petitioner was specifically advised in 2002 that he was not required to register as a sexual offender; a pivotal fact that distinguishes it from the factual situation presented in Gwyn. In Gwyn, the petitioner was always required to register as a sexual offender pursuant to the terms of his plea agreement, and it was the amendments to the act that worked to impose additional restrictions on the petitioner. In the present case, the sexual offender registration act was amended over the years and, at times, did and did not include the Petitioner's conviction. Simply because the act was amended to include the Petitioner's conviction did not mean that the Petitioner was required to register and for some years the State did not seek to apply the

-11-

act to the Petitioner. Accordingly, we are not concerned here with when the sexual offender registration act was amended to encompass the Petitioner's conviction but when the State sought to enforce its requirements against the Petitioner because it was then that the Petitioner was subjected to the punitive consequences of the act. We conclude that, in this case, it was only when the State sought to apply the act's provisions to the Petitioner that it possibly breached a "material term" of the plea agreement triggering the Petitioner's responsibility to pursue his rights diligently.

In 2011, the statute had not yet been amended to encompass the Petitioner's conviction when he was charged with failure to comply with the sexual offender registry's requirements in Wayne County. The Petitioner successfully sought dismissal of the 2011 charge on April 3, 2012, according to the factual allegations set forth in his petition, because the offense was not a listed sexual offense under the Act. Although the Petitioner did not file a post-conviction petition at that time, he did make reasonable efforts to pursue his claim, obtaining dismissal of the charge. As best as we can discern from the record before us on summary dismissal, the State did not seek to enforce the provisions of the Sexual Offender Registration Act against the Petitioner again until June 3, 2014, and August 6, 2014, when the Petitioner was charged in Rutherford County with two separate violations. He subsequently entered nolo contendre pleas to both of those charges. The Petitioner then filed his post-conviction petition, on January 7, 2015, approximately seven months after he was first indicted in Rutherford County.[3] Under these facts, we conclude that the Petitioner was diligently pursuing his rights in accordance with the Whitehead–Holland test.

We find this to be one of those rare unconscionable cases that cries out for due process tolling. See, e.g., Dennis Cedric Woodard, Jr., v. State, No. M2013-01857-CCA-R3-PC, 20014 WL 4536641 (Tenn. Crim. App. Sept. 15, 2014) (concluding that later-arising claim involving attorney misconduct necessitated tolling of the limitations period). However, we note that our determination that the Petitioner is entitled to a hearing is not to be read as indicative of the merit of the Petitioner's claims, which will be analyzed by the post-conviction court. Id. We also guide the lower court to make the appropriate findings in ruling on the petition. Id. Accordingly, this case is reversed, and

---

[3] We note that the dates provided by the Petitioner in his memorandum are the dates that he was indicted; they are not necessarily the dates on which he failed to comply with the State's requests pursuant to the sexual offender registration act, i.e., the offense dates or when the State sought to apply the Act to him. The State could possibly prove that the offense dates were much earlier upon remand and, thus, that the Petitioner did not pursue his rights diligently. However, it is likely that, even if the offense dates are different from the indictment dates, the Petitioner filed his petition within one year from the date of the first offense. This ambiguity exists due to the post-conviction court's summary dismissal of the petition encompassing the merits on the Petitioner's claim rather than solely based on due process tolling considerations.

the Petitioner must receive an evidentiary hearing in which to present proof as to his post-conviction grounds for relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we reverse the summary dismissal of the petition by the post-conviction court and remand for an evidentiary hearing consistent with this opinion.

_____

D. KELLY THOMAS, JR., JUDGE