Cite as 2026 Ark. 92

# SUPREME COURT OF ARKANSAS
**No.** CR–25–468

| | | |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered:** April 30, 2026 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-22-554] |
| V. | | |
| LUIS RAMIREZ | | HONORABLE BRAD KARREN, JUDGE |
| | APPELLEE | REVERSED AND REMANDED. |

**NICHOLAS J. BRONNI, Associate Justice**

Appellee Luis Ramirez allegedly participated in a drive-by shooting, and the State charged him with attempted capital murder and various other crimes. The State later agreed not to pursue those charges—that is, to *nolle pros* them—if Ramirez joined the United States Marine Corps. It was a good deal for Ramirez, giving him the opportunity to right his life. But he never joined the Marines. Instead, just a few months later, Ramirez was allegedly involved in another altercation with the target of the earlier shooting. That led the State to reinstate Ramirez's original charges. The circuit court then dismissed those charges based on the State's agreement not to pursue them. The State appeals. In response, Ramirez argues this appeal is foreclosed and that the dismissal was proper.

We accept the State's appeal; hold that the circuit court erred in dismissing Ramirez's charges; and reverse and remand for further proceedings.

*Background*

In March 2022, Ramirez allegedly participated in a drive-by shooting, during which bullets barely missed a sleeping seven-year-old. The State charged Ramirez with attempted capital murder, a terroristic act, and unlawful discharge of a firearm from a vehicle. It also sought a sentencing enhancement for engaging in violent criminal group activity.

A year later, the State moved to *nolle pros* Ramirez's charges because he had been cooperative and truthful up to that point, was willing to continue cooperating, and was "in the process of joining the Marines." With that background, the parties explained to the circuit court, the State's agreement not to prosecute Ramirez was "contingent on [Ramirez's] success[ful]" enlistment and that Ramirez's enlistment—and enlistment alone—was the "basis for this nol-pros." The parties also told the circuit court that if something beyond either Ramirez's or the State's control prevented his enlistment, the State would seek probation as an alternative sentence. On that basis, the circuit court granted the State's motion to *nolle pros* the charges against Ramirez.

Just months later, in June 2023, Ramirez was allegedly involved in another shooting with the target of the original drive-by shooting. Ramirez has never been charged in connection with that altercation. Instead, a month later, citing Ramirez's failure to join the Marines, the State moved to reinstate the original March 2022 charges. The circuit court granted that motion.

Ramirez then moved to dismiss those charges, arguing that he had a binding agreement with the State requiring dismissal. The circuit court granted Ramirez's motion, finding that Ramirez had intended to join the Marines, that the State prevented him from

2

doing so when it reinstated his original charges, and that, as a result, he was entitled to equitable enforcement of the agreement not to prosecute him. It also concluded that equitable enforcement was appropriate because Ramirez had made a good-faith effort to join the Marines "by spending three hours with a tutor to take the required GED test to enlist" and had signaled a willingness to testify against others if necessary. It claimed that its analysis is supported by our rule of criminal procedure governing plea withdrawals and a statute governing grants of immunity after a defendant declines to testify.

The State appeals.

*Discussion*

This case presents two issues: (1) is this a proper State appeal; and (2) if it is, did the circuit court err in dismissing Ramirez's charges based on the agreement to *nolle pros* those charges? We conclude this is a proper appeal and that the circuit court erred in dismissing the charges.

A. Start with the procedural issue. As relevant here, Arkansas Rule of Appellate Procedure–Criminal 3 only permits the State to appeal "following a . . . felony prosecution" and entry of a final judgment where it shows this court's review is necessary to maintain "the correct and uniform administration of the criminal law." Ark. R. App. P.–Crim. 3(b), (d); *see also Thomas v. State*, 349 Ark. 447, 453, 79 S.W.3d 347, 350 (2002) ("The State's ability to appeal is not a matter of right; rather, it is limited to those cases described under Ark. R. App. P.–Crim. 3."). Under that rule, "we accept appeals by the State when our holding would establish important precedent" or, stated slightly differently, when the State's appeal involves a strictly legal issue "with widespread ramifications." *State v. Crawford*, 373

3

Ark. 95, 97, 281 S.W.3d 736, 738 (2008). Both parties agree that Rule 3 governs this appeal, though they disagree over whether it meets the rule's requirements.

We conclude this case meets that standard. It presents a novel question about what law governs an agreement to *nolle pros* pending charges and the circumstances under which the State may continue to pursue charges. Neither party points to any controlling precedent on this issue, and the circuit court similarly did not point to any. Far from it, the closest authority the circuit court located were statutes and rules that govern plea changes and immunity agreements. But such agreements have little in common with the one at issue here. Ramirez does not seek to change his plea; nor does he claim that the State entered into an immunity agreement after he declined to answer questions. *See* Ark. R. Crim. P. 26.1 (governing a defendant's withdrawal of a guilty or no-contest plea); Ark. Code Ann. § 16-43-605 (Repl. 1999) (governing agreements between the State and a witness after the witness "has declined to answer questions or has requested immunity before answering questions").

The issue presented in this case—the standard governing an agreement to *nolle pros*— is also likely to rearise, and both criminal defendants and the State are entitled to know the relevant standard. Indeed, failing to clarify that standard risks both undermining the right of criminal defendants to be fully informed and exposes them to varying, arbitrary enforcement of the rules governing criminal prosecutions. That is an unacceptable risk. Consequently, we conclude that this appeal has widespread ramifications, that our review is necessary to maintain uniformity, and that this is precisely the kind of appeal that Rule 3 gives us the flexibility to hear. We grant the State's appeal.

4

B. The merits are slightly more complex. Both parties ultimately agree that the circuit court originally granted the State's motion to *nolle pros* the charges against Ramirez on the basis of the parties' representations that Ramirez would enlist in the Marines. It is undisputed that Ramirez failed to join the Marines, which would seem to end the matter. Yet the circuit court held the opposite and dismissed the reinstated charges on the grounds that Ramirez had made a good-faith effort to join the Marines. In particular, it cited the three hours—in total—Ramirez spent preparing to potentially take the GED exam so that he could apply to the Marines. That was erroneous. Instead, the circuit court should have applied ordinary contract principles, treated the agreement at issue like a unilateral contract, concluded that Ramirez failed to perform, and denied Ramirez's motion to dismiss the case.

1. We begin with the standard. We have previously recognized that in the absence of statutory authority, agreements between prosecutors and defendants "are generally interpreted according to ordinary contract principles." *State v. Johnson*, 2010 Ark. 77, at 11–12, 360 S.W.3d 104, 110–11; *see also Hammers v. State*, 261 Ark. 585, 598, 550 S.W.2d 432, 438 (1977) ("Since appellant had no statutory right to immunity and the agreement was not authorized by the court, her claim must be viewed as one to relief on equitable [contract] principles."). That makes sense because an agreement not to prosecute or pursue charges conditioned on the defendant's promise to do something is essentially a contract— with both parties giving up something in exchange for a deal. *See Johnson*, 2010 Ark. 77, at 11–12, 360 S.W.3d at 110–11; *Savage v. State*, 2019 Ark. App. 532, at 10, 590 S.W.3d 164, 170 (applying elements of contract law to an agreement not to prosecute).

To be sure, previous cases have largely involved relatively straightforward "'informal immunity' or 'cooperation agreements'" whereby the parties acknowledged that the State had agreed not to prosecute in exchange for cooperation in an ongoing case. *Johnson*, 2010 Ark. 77, at 11, 360 S.W.3d at 111. By contrast, this case involves—what the circuit court recognized was—a more unorthodox agreement. But unconventional or not, the same principles apply, and the circuit court erred in suggesting otherwise. *See State v. Myrhow*, 865 P.2d 231, 234–35 (Mont. 1993) ("An agreement not to prosecute is generally enforceable and is governed by principles of contract law.").

2. Using ordinary contract principles, this is not a difficult case. A contract requires an offer, an acceptance, and consideration from both parties. *See Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985). Broadly speaking, that means a contract exists when (1) the offeror expresses a "willingness to enter into a bargain"; (2) the offeree manifestly agrees to the offer's terms; and (3) both parties exchange promises or perform. Restatement (Second) of Contracts §§ 19, 24, 71 (1981); *see also Childs v. Adams*, 322 Ark. 424, 432, 909 S.W.2d 641, 645 (1995) (discussing offer and acceptance). Consistent with that framework, when most people think of contracts, they think of bilateral contracts— that is, a contract in which the parties exchange promises, with "each party being both a promisor and a promisee." *Hutchings v. Slemons*, 174 S.W.2d 487, 489 (Tex. 1943) (quoting Restatement (First) of Contracts § 12); *accord SouthTrust Bank v. Williams*, 775 So. 2d 184, 188 (Ala. 2000).

But contracts can also be unilateral, meaning "there is only one promisor and the other party accepts . . . by actual performance or forbearance." Richard A. Lord, *Williston*

6

*on Contracts* § 1.17 (4th ed. 2007); *accord Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) ("A unilateral contract, on the other hand, is 'created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs.'"). In such cases, "[t]he performance" represents both acceptance and "consideration for the contract." *Aon Risk Servs., Inc. v. Meadors*, 100 Ark. App. 272, 280–81, 267 S.W.3d 603, 609 (2007). To illustrate the point, consider the classic example of a poster setting forth an offer of a reward for the return of a lost dog; in that case, "the offeree accepts by performing the particular task," i.e., finding the lost puppy, "for which the reward is offered." *Id*. at 280. And absent performance, the offering party need not pay the reward. *See* Restatement (Second) of Contracts § 50 cmt. b (1932) ("Where the offer requires acceptance by performance and does not invite a return promise, as in the ordinary case of an offer of a reward, a contract can be created only by the offeree's performance.").

This case involves a similar unilateral fact pattern. The State agreed not to prosecute Ramirez if he joined the Marines. So, much like the dog owner's obligation to pay a reward, the State's obligation not to prosecute Ramirez was, as the parties told the circuit court, "contingent on [Ramirez's] success[ful]" enlistment. That made the agreement between the parties a unilateral contract—one that became enforceable only once Ramirez enlisted. Moreover, that is true even though, as Ramirez argues, his ability to perform rested on other factors outside his control, like the Marines' willingness to accept him. So, contrary to the circuit court's conclusion, absent Ramirez's successful enlistment, the State was free to revoke that agreement and pursue the charges against him. *See Cal Fire Loc. 2881 v. Cal. Pub. Emp.'s Ret. Sys.*, 435 P.3d 433, 449–50 (Cal. 2019) ("Under ordinary

7

principles of contract law, such an offer can be revoked or modified prior to acceptance—in other words, prior to the promisee's performance of the act constituting performance."); *Strata Prod. Co. v. Mercury Expl. Co.*, 916 P.2d 822, 827 (N.M. 1996) ("In a unilateral contract, the offeree accepts the offer by undertaking the requested performance. Generally, the offeror is free to revoke or revise the offer before acceptance.").

To conclude the opposite, the circuit court claimed that Ramirez was entitled to equitable enforcement because he had spent a few hours studying to obtain his GED, which was a requirement to join the Marines, and he was willing to testify against others. Neither suggestion changes the analysis. *First*, Ramirez's trivial effort at preparing for the GED exam is no different than someone who spends a few hours looking for a lost dog and then gives up, and in that situation, the owner is under no obligation to pay anything. Moreover, unlike the situation where the searcher at least gave up his time and got nothing in return, it is hard to see how Ramirez's spending a few hours working toward something that would benefit him, regardless of whether he faces prosecution, constitutes detrimental reliance.

Nor could Ramirez plausibly claim that three hours of study constitutes substantial performance or somehow made it unfair for the State to pursue charges in the manner that they had agreed. *See State v. Givens*, 776 So. 2d 443, 455 (La. 2001) ("In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law."); *Bretz v. Union Cent. Life Ins. Co.*, 16 N.E.2d 272, 274 (Ohio 1938) ("steps taken preparatory to performance" do not bind an offeror); Restatement (First) of Contracts § 90 (1932)

8

(requiring "action or forbearance of a definite and substantial character" to constitute substantial performance).

*Second*, nor does the circuit court's statement that Ramirez was willing to testify against others change things. To start, that was not the basis for the agreement. The parties told the circuit court that the agreement to *nolle pros* was "contingent on [Ramirez's] success[ful]" enlistment, and absent Ramirez's enlistment, there was no binding contract. To be sure, during the original *nolle pros* hearing, the State noted that Ramirez's "willingness to cooperate with [the State's] investigation," his "truthful[ness]" in the weeks leading up to that hearing, and Ramirez's willingness to continue cooperating factored into the State's decision to offer him a deal. But it was clear that "the basis for this nol-pros – is that he is in the process of joining the Marines. This nol-pros is contingent on his success in that regard." The circuit court also did not point to anything demonstrating that, following the *nolle pros* hearing, Ramirez continued to cooperate with the State. On the contrary, the circuit court relied exclusively on Ramirez's pre-*nolle pros* agreement conduct. That is not a basis for finding substantial compliance, and we reject any suggestion to the contrary.

We hold that the circuit court should have relied on ordinary contract-law principles to interpret the agreement before it. Had it done so, it would have concluded that the State was entitled to do exactly what it did here: revoke the unilateral agreement and prosecute Ramirez. The circuit court erred as a matter of law in holding otherwise, and we reverse the decision of that court dismissing the charges against Ramirez.

*Conclusion*

9

Because this case presents a novel question about how lower courts interpret an agreement to *nolle pros*, we accept the State's appeal. Having reviewed that appeal on the merits, we reverse the circuit court's dismissal of the charges against Ramirez and remand for further proceedings.

Reversed and remanded.

WOOD, J., concurs.

BAKER, C.J., and HUDSON, J., dissent.

**RHONDA K. WOOD, Justice, concurring.** I agree that the State can appeal from the circuit court's order dismissing the charges against Luis Ramirez. I also agree that the circuit court erred in its decision, but for reasons different from the majority's. I must therefore concur.

The statute gives the prosecutor authority to dismiss criminal charges against a defendant.[1] The circuit court must approve any dismissal, and the dismissal does not bar future prosecution.[2] I would analyze the appeal under these governing principles rather than principles of contract law. In other words, the State and Ramirez did not have a contract, unilateral or otherwise. Instead, the State exercised its statutory authority to dismiss charges and exercised its statutory ability to refile those charges.

---

[1]Ark. Code Ann. § 16-89-122 (Repl. 2005).

[2]*Id.*

I recognize that principles of equity may, on certain facts, justify estopping the State from exercising its authority to refile.[3] On these facts, however, I would hold that the circuit court clearly erred in finding detrimental reliance. Ramirez had taken very few, if any, concrete steps to enlist in the Marines; nor had he yet waived his Fifth Amendment privilege by testifying against his confederates. Because this record does not support a finding of detrimental reliance, the circuit court clearly erred by estopping the State from exercising its statutory right to refile.

**KAREN R. BAKER, Chief Justice**, **dissenting.** I must dissent from the majority's decision to reverse and remand. Instead, I would dismiss the State's appeal because it does not involve the correct and uniform administration of the law, and therefore, we do not have jurisdiction over this appeal.

Unlike that of a criminal defendant, the State's right to appeal is limited by the provisions of Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. *State v. Ledwell*, 2017 Ark. 252, at 3, 526 S.W.3d 1, 3. Pursuant to Rule 3(d), we will not consider an appeal by the State unless the correct and uniform administration of the criminal law requires review by this court. Ark. R. App. P.–Crim. 3(d). The correct and uniform administration of the criminal law is at issue when the question presented is solely a question of law independent of the facts in the case appealed. *State v. Reynolds*, 2019 Ark. 154, 574 S.W.3d 647. When an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, the appeal does not involve the correct and uniform

---

[3]*See Branch v. Standard Title Co.*, 252 Ark. 737, 740, 480 S.W.2d 568, 570 (1972) (explaining that estoppel heavily depends on facts that "are rarely in any two cases precisely the same").

administration of the law. *State v. Mancia-Sandoval*, 2010 Ark. 134, 361 S.W.3d 835. Similarly, where the resolution of the issue on appeal turns on facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *Id*. Stated another way, this court will accept appeals by the State only when its holding will establish an important precedent for the correct and uniform administration of justice. *State v. Fuson*, 355 Ark. 652, 144 S.W.3d 250 (2004).

On appeal, the State argues that the circuit court erred by granting Ramirez's motion to enforce the nolle prosequi agreement. The State argues that the standards governing this type of agreement have not yet been articulated by this court. The State acknowledges that in granting Ramirez's motion to enforce the nolle prosequi agreement, the circuit court relied on the standard set forth in *State v. Johnson*, 2010 Ark. 77, 360 S.W.3d 104, but argues that the agreement at issue here is not one of the three agreements addressed in *Johnson* as it is not a plea agreement, a statutory-immunity agreement, or a nonprosecution agreement entered into before the filing of charges. In *Johnson*, we held that "where the State has entered into an agreement not to prosecute with a prospective defendant and the defendant has performed and acted to his detriment or prejudice in reliance upon that agreement, the government must be required to honor such an agreement." *Id*. at 19, 360 S.W.3d at 115. Here, in arguing that the agreement should be governed by ordinary contract principles, the State explains that "in the absence of an applicable rule or statute specifically governing this agreement, standard contract principles should apply. That is what this Court did when evaluating a 'third category' of agreements—an agreement to abstain from filing charges at

the outset in exchange for some consideration on the party of the would-be defendant." The State then quotes *Johnson* where we stated as follows: "Here, the prosecuting attorney agreed to divert Johnson's case and not file formal charges if Johnson would obtain a psychiatric evaluation that indicated Johnson was unlikely to be a pedophile. Thus, there was an agreement not to prosecute in exchange for the defendant's agreement to undergo an evaluation." The State explains that while the agreement at issue here is not the exact type of agreement addressed in *Johnson*, the same standards apply. I agree that the same standard applies, and apparently, so did the circuit court. Therefore, the acceptance of this State appeal is not important to the correct and uniform administration of the criminal law when the circuit court correctly identified and employed the proper standard. Here, *Johnson* controls and as settled law deprives the State of its opportunity to appeal because the correct and uniform administration of the law is not at issue. Rather than criticize the standard employed by the circuit court, the State simply disagrees with the application of the standard and the result reached by the circuit court. We do not permit State appeals merely to demonstrate the fact that the circuit court erred. *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997).

Not only is the *Johnson* standard applicable to the present case, the circuit court's decision turned upon the unique facts of this case. Here, as Ramirez points out, the circuit court found that Ramirez detrimentally relied on the agreement not to prosecute. Specifically, the circuit court found that Ramirez waived his Fifth Amendment privilege not to incriminate himself. Further, the circuit court found that Ramirez partially performed his obligation to enlist in the Marines by taking the TABE test and studying with his tutor

13

for three hours, which is required to obtain his GED. The circuit court noted that there was no evidence that Ramirez became unwilling to testify against himself and other co-defendants. The circuit court found that by refiling the charges on July 31, 2023, the State obstructed or prevented Ramirez from joining the Marines. As such, the circuit court found that his obligation to enlist in the Marines was deemed fully performed. Again, while this court may disagree with the circuit court's findings, we do not accept State appeals to demonstrate that the circuit court erred.

In my view, this appeal turns on the facts unique to this case and the appeal does not require interpretation of our criminal rules with widespread ramification. Due to the fact-intensive nature of this case, the matters before us do not constitute a proper State appeal. Accordingly, we do not have jurisdiction, and I would dismiss the appeal.

HUDSON, J., joins.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellant.

*Stuart Cearley Law Group*, by: *Seth Irwin* and *Stuart Cearley*, for appellee.